Mark A. Neubauer (73728)
mneubauer@cfjblaw.com
CARLTON FIELDS JORDEN BURT, LLP
2000 Avenue of the Stars, Suite 530 North Tower
Los Angeles, CA 90067-4707
Telephone:   (310) 843-6300
Facsimile:   (310) 843-6301

Attorneys for Defendants Johnson & Johnson
and McNeil Nutritionals, LLC

FILED

2014 SEP 17  AM 10: 43

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:___

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

LA  CV 14  07250-DMG (MRWx)

| | |
|---|---|
| LORRAINE VIGGIANO, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT** |
| vs. | |
| JOHNSON & JOHNSON, a New Jersey company; MCNEIL NUTRITIONALS, LLC, a Pennsylvania limited liability company; and DOES 1-10, inclusive, | Complaint filed:    August 14, 2014 |
| Defendants. | |

36431580.3

1        **TO THE JUDGES FOR THE UNITED STATES DISTRICT COURT**

2 **FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

3        **PLEASE TAKE NOTICE** that Johnson & Johnson and McNeil

4 Nutritionals, LLC, the only defendants (other than unnamed "Doe" defendants) in

5 the above-titled action, hereby remove this action pursuant to 28 U.S.C. §§ 1332,

6 1441, and 1446 from the Superior Court for the State of California for the County

7 of Ventura to the United States District Court for the Central District of California.

8 The grounds for removal are set forth below.

9        1.     On May 30, 2014, Plaintiff Lorraine Viggiano ("Viggiano")

10 commenced this action by filing a Complaint in the Superior Court for the State of

11 California for the County of Ventura captioned *Lorraine Viggiano v. Johnson &*

12 *Johnson et al.*, Case No. 56-2014-00453587-CU-BC-VTA.

13        2.     On August 14, 2014, prior to effecting service of process on

14 Defendants, Viggiano filed an Amended Complaint ("AC") in the Superior Court

15 for the State of California for the County of Ventura.

16        3.     On August 19, 2014, Viggiano served the Amended Complaint on

17 Defendant McNeil Nutritionals, LLC, along with a summons; the Declaration of

18 Lorraine Viggiano dated May 29, 2014; a Notice of Case Assignment and

19 Mandatory Appearance; and a Minute Order and Notice of Change of Track

20 Assignment. Service was made personally on McNeil's registered agent for

21 service of process at the Corporation Trust Company, 1209 Orange Street,

22 Wilmington, Delaware 19801. Viggiano's Proof of Service filed in the state court

23 is attached hereto as **Exhibit A**.

24        4.     As of this date, Viggiano has not separately served process on

25 Defendant Johnson & Johnson, which nonetheless joins in this removal. *See*

26 *Sherman v. Haynes & Boone*, 2014 U.S. Dist. LEXIS 118371, at *3 (N.D. Cal.

27 2014) ("[A] defendant may remove an action prior to receiving proper service").

28

36431580.3

5.      A true and correct copy of the Summons and the Amended Complaint, as well as the remaining documents served on McNeil, is attached hereto as **Exhibit B**. These are copies of all of the process, pleadings and orders within the meaning of 28 U.S.C. Section 1446(a) served upon these Defendants.

6.      This Notice of Removal is timely because it is filed within thirty days of service of process on McNeil.  *See* 28 U.S.C. § 1446(b); *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011) ("[E]ach defendant is entitled to thirty days to exercise his removal rights after being served.").

7.      Written notice of the filing of this Notice of Removal and the removal of the state court action is being served on Plaintiff through her counsel of record. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being promptly filed with the Clerk of the Superior Court for the State of California for the County of Ventura .

## PLAINTIFF'S COMPLAINT

8.      Viggiano alleges that she is a citizen of California.  (AC ¶ 13.)

9.      Defendant McNeil Nutritionals, LLC is a Delaware limited liability company with its principal place of business in Pennsylvania.  (AC ¶ 15.)

10.      Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in New Jersey.  (Declaration of Lorraine Viggiano dated May 29, 2014 ¶ 5.)

11.      Viggiano alleges that Defendants falsely advertised Nectresse™ no-calorie sweetener as "natural" and made primarily from monk fruit.  (AC ¶¶ 4-9.)

12.      Viggiano asserts claims (1) under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (2) under California's False Advertising Law, Cal. Bus. & Prof. Code § 17500; (3) under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750; (4) for unjust enrichment; (5) for breach of express warranty; (6) for breach of implied warranty; and (7) under the consumer-protection statutes of 40 other jurisdictions.  (AC ¶¶ 72-146.)

2

13.     Viggiano purports to sue on behalf of three different putative classes: (1) a class of "[a]ll persons in California who purchased Nectresse"; (2) a class of "[a]ll persons in the United States outside of California who purchased Nectresse"; and (3) a class of "[a]ll persons who reside in states in the United States outside of California with similar consumer protection laws, breach of express warranty laws and breach of implied warranty law, who purchased Nectresse."  (AC ¶ 61.)

14.     Viggiano pleads that "each" of the proposed classes "includes thousands of persons who have purchased [Nectresse]."  (AC ¶ 62.)

15.     Viggiano seeks, *inter alia*, a declaratory judgment; a prohibitory injunction; a mandatory "corrective advertising and information campaign"; "restitution . . . to all affected persons [of] all funds acquired by means of [the challenged practices]"; "disgorge[ment] [of] . . . all revenue and profits derived by Defendants as a result of its acts or practices alleged in [the] Complaint"; unspecified additional "damages to Plaintiff and the Classes" (AC at Prayer for Relief, pp. 41-42), and unspecified "punitive and/or statutory damages" (AC ¶ 146).

## BASIS OF FEDERAL JURISDICTION UNDER
## CLASS ACTION FAIRNESS ACT

16.     This action is removable to this Court because federal diversity jurisdiction, 28 U.S.C. § 1332, exists over Viggiano's claims pursuant to the Class Action Fairness Act of 2005, Pub L. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified in various sections of Title 28 of the United States Code including 28 U.S.C. §§ 1332(d) & 1453.

17.     CAFA became effective on February 18, 2005, and applies to any civil action commenced on or after that date.  CAFA applies to this action because it was commenced on May 30, 2014.

18.     Congress enacted CAFA to enlarge federal jurisdiction over proposed class actions.  CAFA provides that a class action against a non-governmental

3

1   entity may be removed to federal court if: (a) the number of proposed class

2   members is not less than 100; (b) any member of the proposed class is a citizen of

3   a state different from any defendant; and (c) the aggregate amount in controversy

4   exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d)(2),

5   1332(d)(5) & 1453(b).  As set forth below, all of the requirements for removal are

6   satisfied.

7                                    **Class Size**

8          19.    CAFA's first requirement, that the proposed class contain at least 100

9   members, 28 U.S.C. § 1332 (d)(5), is satisfied, as Viggiano expressly alleges that

10  "each" of the proposed classes "includes thousands of persons who have

11  purchased [Nectresse]."  (AC ¶ 62.)

12                        **Minimal Diversity of Citizenship**

13         20.    CAFA's second requirement, that any one member of the proposed

14  class be a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2),

15  is satisfied.

16         21.    Viggiano alleges that she is a citizen of California.  (AC ¶ 13.)

17         22.    Defendant McNeil Nutritionals, LLC is a Delaware company with its

18  principal place of business in Pennsylvania.  (AC ¶ 15; Declaration of Kim

19  Holdsworth in Support of Removal ("Holdsworth Decl.") ¶ 3.)    McNeil

20  Nutritionals, LLC is therefore a citizen of Delaware and Pennsylvania.

21         23.    Defendant Johnson & Johnson is a New Jersey corporation with its

22  principal place of business in New Jersey.  (AC ¶ 16; Declaration of Lorraine

23  Viggiano dated May 29, 2014 ¶ 5; Holdsworth Decl. ¶ 4.)  Johnson & Johnson is

24  therefore a citizen of New Jersey.

25         24.    Diversity of citizenship therefore exists between at least one proposed

26  class member and any defendant, satisfying 28 U.S.C. § 1332(d)(2).

27         25.    The complete diversity of citizenship between Viggiano and

28  Defendants not only satisfies CAFA's minimal diversity-of-citizenship

                                         4

1    requirement, but also precludes application of the "local controversy" or "home

2    state" exceptions of 28 U.S.C. §§ 1332(d)(3) and (d)(4).

3        26.    The citizenship of the unnamed Doe Defendants is not alleged in the

4    Amended Complaint.  However, Doe defendants are disregarded for the purpose

5    of determining removability.  28 U.S.C. § 1441(b)(1); *Soliman v. Philip Morris,*

6    *Inc.*, 311 F.3d 966, 971 (9th Cir. 2002).

7                          **Amount in Controversy**

8        27.    CAFA's third requirement, that the aggregate amount in controversy

9    exceed $5 million exclusive of interest and costs, 28 U.S.C. § 1332(d)(2), is

10   satisfied.

11       28.    Although Defendants dispute liability and damages, Viggiano's

12   allegations and prayer for relief, irrespective of their merits, place in controversy

13   an amount greater than $5 million.

14       29.    Where, as here, the complaint does not set forth a specific sum of

15   damages sought, "the removing defendant must prove by a preponderance of the

16   evidence that the amount in controversy requirement has been met." *Abrego*

17   *Abrego v. Dow Chem. Co.*, 443 F. 3d 676, 683 (9th Cir. 2006).

18       30.    In determining whether the defendant has met its burden, "[a] district

19   court may consider whether it is 'facially apparent' from the complaint that the

20   jurisdictional amount is in controversy," or may look to "'summary-judgment-

21   type evidence relevant to the amount of controversy . . . .'" *Singer v. State Farm*

22   *Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

23       31.    A district court may "make reasonable deductions, reasonable

24   inferences, or other reasonable extrapolations" from the pleadings or the facts

25   offered by the defendant to determine whether the $5 million threshold is met.

26   *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

27       32.    On behalf of all Nectresse purchasers nationwide (AC ¶ 61), Viggiano

28   seeks "restitution . . . [of] all funds acquired by means of [the challenged

5

1 practices]" and "disgorge[ment] [of] . . . all revenue and profits derived by

2 Defendants as a result of its acts or practices alleged in [the] Complaint," plus

3 additional "damages to Plaintiff and the Classes." (AC at Prayer for Relief, pp. 41-

4 42.)

5     33.    Viggiano alleges that all Nectresse products were "[m]isbranded" and

6 therefore "have no economic value and are legally worthless as a matter of law."

7 (AC ¶ 51.) Therefore, fairly construed, the Amended Complaint alleges that

8 putative class members were damaged in the amount of the full retail purchase

9 price paid for Nectresse.

10     34.    From the introduction of Nectresse in July 2012 to the present,

11 Defendants have sold at least 4,247,000 units of Nectresse in the United States,

12 with a total retail sales value of at least $18,573,000. (Declaration of Kim

13 Holdsworth in Support of Removal ("Holdsworth Decl.") ¶ 11.)

14     35.    An award of damages equal to the amount that putative class members

15 paid for Nectresse would more than triple CAFA's $5 million threshold.

16     36.    Viggiano also seeks unspecified "punitive and/or statutory damages"

17 under assorted out-of-state consumer-protection laws. (AC ¶ 146.) These sums

18 raise the amount in controversy further.

19     37.    Viggiano further requests injunctive relief and a nationwide

20 "corrective advertising" campaign (AC at Prayer for Relief, pp. 41-42), which add

21 significantly to the amount in controversy. *See Int'l Padi, Inc. v. Diverlink*, 2005

22 U.S. App. LEXIS 14234, at *3-4 (9th Cir. July 13, 2005) ("[I]n determining the

23 amount in controversy, we may also include the value of the requested injunctive

24 relief to either party.").

25     38.    Therefore, the amount in controversy is demonstrably in excess of $5

26 million.

27                        * * *

28

6

36431580.3

1    39.    For the foregoing reasons, this action is properly removed to this

2  Court.

3    WHEREFORE, Johnson & Johnson and McNeil Nutritionals, LLC, the only

4  non-"Doe" defendants in the above-titled action, respectfully remove this action

5  from the Superior Court for the State of California for the County of Ventura to the

6  United States District Court for the Central District of California.

7

8  Dated: September 16, 2014         CARLTON FIELDS JORDAN BURT, LLP

9

10                          By: _____

11                              MARK A. NEUBAUER

12                              Attorneys for Defendants Johnson & Johnson
                                and McNeil Nutritionals, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

EXHIBIT A

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number; and address): | FOR COURT USE ONLY |
|---|---|
| MARCUS J. BRADLEY, ESQ.   SBN 174156 | |

29229 CANWOOD ST., STE 208
AGOURA HILLS, CA  91301

TELEPHONE NO.: 818-991-8080          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):   PLAINTIFF

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   VENTURA
STREET ADDRESS: 800 S. VICTORIA ST.
MAILING ADDRESS:
CITY AND ZIP CODE: VENTURA, CA 93009
BRANCH NAME:

**VENTURA
SUPERIOR COURT
FILED
AUG 20 2014
MICHAEL D. PLANET
Executive Officer and Clerk
BY_____, Deputy
DEBRA RAMOS**

| PLAINTIFF/PETITIONER:   LORRAINE VIGGIANO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   JOHNSON & JOHNSON | 56-2014-00453587-CU-BC-VTA |
| **PROOF OF SERVICE OF SUMMONS** | ref No. or File No. |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒ summons
   b. ☐ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☐ other *(specify documents):*  FIRST AMENDED CLASS ACTION COMPLAINT, DECLARATION OF PLAINTIFF LORRAINE VIGGIANO RE PROPER COUNTY FOR COMMENCEMENT AND TRIAL OF A CLAIM UNDER CONSUMERS LEGAL REMEDIES ACT, NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE, MINUTE ORDER RE COMPLEX CASE DESIGNATION & NOTICE OF CHANGE OF TRACK ASSIGNMENT - COMPLEX CASE

3. a. Party served *(specify name of party as shown on documents served):*

   MCNEIL NUTRITIONALS, LLC

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

   AMY MCLAREN  (process agent)

4. Address where the party was served:
   C/O THE CORPORATION TRUST CO. 1209 ORANGE STREET WILMINGTON, DE 19801 (REGISTERED AGENT)

5. I served the party *(check proper box)*
   a. ☒ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 8/19/14          (2) at *(time):*  1:35 PM
   b. ☐ by substituted service. On *(date):*          at *(time):*-          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*          or ☐ a declaration of mailing is attached.

   (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

EXHIBIT A                          8

| PLAINTIFF/PETITIONER: | LORRAINE VIGGIANO | CASE NUMBER |
|---|---|---|
| DEFENDANT/RESPONDENT: | JOHNSON & JOHNSON | 56-2014-00453587-CU-BC-VTA |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in Item 2 to the party, to the address shown in Item 4, by first-class mail, postage prepaid.

    (1) on *(date):*                     (2) from *(city):*

    (3) ☐   with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.* (Code Civ. proc., § 415.30.)

    (4) ☐   to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ by other means *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐  as an individual defendant.
  b. ☐  as the person sued under the fictitious name of *(specify):*
  c. ☐  as occupant.
  d. ☒  On behalf of *(specify):*   MCNEIL NUTRITIONALS, LLC
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 Joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☒ other:   LLC |

7. Person who served papers
  a. Name:   DENORRIS BRITT
  b. Address:   PO BOX 1360 WILMINGTON, DE 19899
  c. Telephone number:   302-475-2600
  d. The fee for service was: $ 59.00
  e. I am:
    (1) ☒  not a registered California process server.
    (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐  a registered California process server:
      (i) ☐  owner  ☐  employee  ☐  independent contractor.
      (I I) Registration No.:
      (III) County:

8. ☒  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9. ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:   8/19/14

DENORRIS BRITT                 ▶
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)       (SIGNATURE)

---

PROOF OF SERVICE OF SUMMONS

EXHIBIT A           9

EXHIBIT B

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** JOHNSON & JOHNSON, a New Jersey
**(AVISO AL DEMANDADO):** company; MCNEIL NUTRITIONALS,
LLC, a Pennsylvania limited liability company; and
DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** LORRAINE VIGGIANO,
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** individually and on
behalf of all others similarly situated

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

VENTURA SUPERIOR COURT
**FILED**
MAY 3 0 2014
MICHAEL D. PLANET
Executive Officer and Clerk
BY:_____, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>VENTURA COUNTY SUPERIOR COURT<br>800 S. Victoria Street<br>800 S. Victoria Street<br>Ventura, CA 93009 | CASE NUMBER:<br>(Número del Caso):<br>56-2014-00453587-CU-BC-VTA |

RECEIVED
AUG 1 9 2014

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Marcus J. Bradley, Esq. (SBN 174156)
Kiley Lynn Grombacher, Esq. (SBN 245960)    (818) 991-8080  (818) 991-8081
MARLIN & SALTZMAN, LLP
29229 Canwood Street, Suite 208, Agoura Hills, CA   91301

DATE:                                    Clerk, by _____, Deputy
(Fecha)                                  (Secretario)                        (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): *Johnson + Johnson*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other (specify):
4. ☐ by personal delivery on (date):                                    **Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS**<br>Legal<br>Solutions<br>Plus | Code of Civil Procedure §§ 412.20, 465 |

EXHIBIT B                    10

1  **MARLIN & SALTZMAN, LLP**
   Marcus J. Bradley, Esq. (SBN 174156)
2  Kiley Lynn Grombacher (SBN 245960)
   29229 Canwood Street, Suite 208
3  Agoura Hills, California  91301
   Telephone:  (818) 991-8080
4  Facsimile:  (818) 991-8081
   mbradley@marlinsaltzman.com
5  kgrombacher@marlinsaltzman.com

6  Attorneys for Plaintiff

7

VENTURA
SUPERIOR COURT
FILED

AUG 1 4 2014

MICHAEL D. PLANET
Executive Officer and Clerk
BY:_____,Deputy
**LESLIE PARAMO**

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                          **COUNTY OF VENTURA**

10

| | |
|---|---|
| 11  LORRAINE VIGGIANO, individually and on behalf of all others similarly situated, | **CASE NO.  56-2014-00453587-CU-BC-VTA** |
| 13 | **FIRST AMENDED CLASS ACTION** |
| 14                    Plaintiff, | **CLASS ACTION COMPLAINT FOR** |
| 15  v. |   1. **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200,** *et seq.* |
| 16  JOHNSON & JOHNSON, a New Jersey company; MCNEIL NUTRITIONALS, LLC, a Pennsylvania limited liability company.; and DOES 1 through 10, inclusive, |   2. **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17500,** *et seq.* |
| 21                    Defendants. |   3. **VIOLATION OF CALIFORNIA CIVIL CODE § 1750.** *et seq.* |
| 22  Date Served: 8/19/14 |   4. **UNJUST ENRICHMENT** |
|    Company Served: J+J |   5. **BREACH OF EXPRESS WARRANTY** |
| 25 |   6. **BREACH OF IMPLIED WARRANTY** |
| 26  2014006191 |   7. **VIOLATION OF CONSUMER FRAUD LAWS** |
|    Personal Service        NA | **JURY TRIAL DEMANDED** |

-1-

**First Amended Class Action Complaint**

1   Plaintiff Lorraine Viggiano ("Plaintiff") alleges the following based upon
2 personal knowledge as to herself and her own acts, and upon information and
3 belief and the investigation by Plaintiff's counsel, which included, among other
4 things, a review of public documents, marketing materials, and announcements
5 made by McNeil Nutritionals, LLC ("Defendant" or "McNeil") as to all other
6 matters. Plaintiff believes that substantial additional evidentiary support exists for
7 the allegations set forth herein and will be available after a reasonable opportunity
8 for discovery.

9   <u>**NATURE OF THE ACTION**</u>

10   1.   This action seeks to remedy the unfair, deceptive, and unlawful
11 business practices of McNeill with respect to the marketing, advertising, labeling,
12 and sales of Nectresse® Natural No Calorie Sweetener (the "Product" or
13 "Nectresse® Natural No Calorie Sweetener" or "Nectresse").

14   2.   Agribusiness behemoth McNeill is in the business of creating
15 innovative and reformulated food and beverage nutritional products. For instance,
16 in addition to Nectresse, McNeill markets SPLENDA® Sweetener Products,
17 VIACTIV® Dietary Supplements, LACTAID® Milk and Dietary Supplements
18 and BENECOL® Products."[1]

19   3.   McNeill recognizes consumers are increasingly health conscious.[2]
20 To capitalize on this market trend, McNeill began deloeping and marketing a
21 purportedly natural, sweeter-than-sugar, non-caloric sweetening ingredient for
22 food and beverages known as *Magou-VTM* ("Magou-VTM"). Magou-VTM is an
23 extract of the leaf of the monk fruit plant. McNeill uses Magou-VTM as an
24 ingredient in its tabletop sweetener product, branded as Nectresse®.

25

---

26 [1] *See http://www.multivu.com/mnr/57256-nectresse-natural-no-calorie-sweetener-*
27 *real-fruit-lisa-ling (last visited May 12, 2014).*
28 [2] *See http://www.multivu.com/mnr/57256-nectresse-natural-no-calorie-sweetener-*
*real-fruit-lisa-ling (last visited May 12, 2014).*

**First Amended Class Action Complaint**

4.     Since as early as 2012 ("Class Period"), McNeill has manufactured, distributed, and sold Nectresse and consistently has marketed, advertised, and labeled Nectresse as a natural sweetener primarily made from the monk fruit plant.

5.     As part of a scheme to make Nectresse more attractive to consumers, boost its sales, and ultimately increase its profits, McNeill uses terms such as "100% Natural," "Natural No Calorie Sweetener," "Nectresse® sweetener comes from nature," and natural imagery such as the leaves of the labeling, advertising, and marketing materials. (See e.g. exam





6.     The use of these terms and natural imagery is designed to, and does, induce consumers, such as Plaintiff and the members of the putative classes, into believing that Nectresse is a natural sweetener primarily made from the monk fruit plant that does not contain ingredients that are either synthetic or harshly chemically processed and, therefore, is a healthy choice and is superior to competing sugar-alternative sweeteners that do not claim to be natural.

7.     However, Defendants' labeling, advertising, and marketing campaign is false and misleading because: (1) McNeill touts the monk fruit plant as the

-3-

**First Amended Class Action Complaint**

1  reason Nectresse is natural when, in fact, the monk fruit-derived ingredient,

2  Magou-VTM, is not the natural crude preparation of monk fruit, but rather, is a

3  highly chemically processed and purified form of monk fruit extract; (2) the monk

4  fruit-derived Magou-VTM comprises *only a minute fraction of* Nectresse which

5  is actually compromised mainly of erythritol (83%); (3) the main ingredient,

6  erythritol, which McNeill also purports to be a natural ingredient derived through

7  natural processes, is not made like it is in nature, but rather is synthetically made;

8  and (4) McNeill describes the process of obtaining monk fruit leaf extract as a

9  simple five-step process: "pick, crush, infuse, dry, blend (with other natural

10  sweeteners)" but does not tell the consumer that, just to produce the "monk

11  fruitextract," its supplier adds ethanol and other chemical resins in a patented

12  multi-step process to purify it.  In short, Nectresse is not made primarily from the

13  monk fruit plant, it is predominantly made of erythritol, and contains only a

14  minute quantity of monk fruit-derived Magou-VTM (not natural crude monk

15  fruit); the erythritol used is not natural, it is synthetic; and, the monk fruit-derived

16  Magou-VTM is harshly purified through chemical processes.  As a result, no

17  reasonable consumer would consider Nectresse to be a natural product.

18      8.    When purchasing Nectresse, Plaintiff relied on Defendants'

19  misrepresentations that Nectresse is a natural sweetener primarily made from the

20  monk fruit plant.  Plaintiff would not have purchased this product if she had

21  known that Defendants' representations were false and misleading.  Plaintiff and

22  the Classes paid a premium for Nectresse over comparable sugar-alternative

23  sweeteners that did not purport to be natural.  Nectresse is consistently more

24  expensive per packet than sugar-alternative competitors, like Sweet 'N Low and

25  Splenda.  Plaintiff would not have purchased Nectresse had she known the truth.

26  Plaintiff suffered an injury by purchasing the Product at inflated prices.  Plaintiff

27  did not receive a natural sweetener primarily made from the monk fruit plant;

28  rather, she received a product that is made predominantly of a synthetic ingredient

First Amended Class Action Complaint

1   with only a miniscule amount of Magou-VTM.

2       9.    Defendants' conduct of falsely marketing, advertising, labeling, and

3   selling Nectresse as a natural sweetener primarily made from the monk fruit plant

4   constitutes unfair, unlawful, and fraudulent conduct; is likely to deceive members

5   of the public; and is unethical, oppressive, unscrupulous, and/or substantially

6   injurious to consumers, because, among other things, it misrepresents the

7   characteristics of goods and services.  As such, Plaintiff seeks relief in this action

8   individually and as a class action on behalf of all purchasers in the United States

9   of Defendants' Nectresse (the "Class").  Plaintiff also seeks relief in this action

10  individually and as a class action on behalf of a subclass of all purchasers in

11  California of Defendants' Nectresse (the "California Class").

12  **JURISDICTION AND VENUE**

13      10.    Both jurisdiction and venue are proper in this Court. Defendants

14  conduct, or have conducted, a substantial amount of business activity in

15  California. Defendants have sufficient minimum contacts in California or

16  otherwise intentionally avail themselves of the California market through, without

17  limitation, their advertisement, promotion, marketing, sales and/or distribution of

18  Nectresse in the State of California and the County of Ventura and other business

19  activities, so as to render the exercise of jurisdiction over t by the California courts

20  consistent with traditional notions of fair play and substantial justice.

21      11.    Venue is proper in this Court because Defendants regularly conduct

22  business in Ventura County, because Plaintiff lives in Ventura County, and

23  because the conduct alleged herein which gives rise to the claims asserted

24  occurred within Ventura County.  Specifically, Plaintiff purchased the subject

25  product at a store in Ventura County.

26      12.    Defendants have distributed, marketed, advertised, labeled, and sold

27  Nectresse, which is the subject of the present complaint, in this District.  Thus,

28  under 28 U.S.C. §§1391(c)(2) and (d), Defendants are deemed to reside in this

-5-

**First Amended Class Action Complaint**

1    District.   As such, venue is proper in this judicial district under 28 U.S.C.
2    §1391(b)(1) because Defendants are deemed to reside in this District and under 28
3    U.S.C. §1391(b)(2), because Defendants conduct business in this District and a
4    substantial part of the acts or omissions giving rise to the claims set forth herein
5    occurred in this District.

### PARTIES

7        13.   Plaintiff Lorraine Viggiano is a citizen of California and an
8    individual consumer.   During the Class Period, Plaintiff Viggiano purchased
9    Nectresse at a grocery store in Moorpark, California.

10       14.   Prior to purchasing the Product, Plaintiff Viggiano read and relied
11   upon false and misleading statements that were prepared by and/or approved by
12   Defendant and its agents and disseminated through the Nectresse packaging.   For
13   each purchase, she understood that she was paying for a natural sweetener
14   primarily made from the monk fruit plant and was deceived when she received a
15   product that is made predominantly of synthetic erythritol and with only a
16   miniscule amount of the monk fruit-derived Magou-V™, which is purified
17   through a harsh chemical process.   During the Class Period, Plaintiff Viggiano
18   also viewed and relied on Nectresse's website, which represented the Product as a
19   natural sweetener primarily made from the monk fruit plant.   But for Defendants'
20   misrepresentations, Plaintiff Viggiano would not have purchased Nectresse,
21   and/or would not have paid a premium for Nectresse over the price of other sugar-
22   alternative sweeteners that are not promoted as natural.   Plaintiff Viggiano thus
23   was damaged by Defendants' practice.

24       15.   Defendant McNeill Nutritionals LLC is a subsidiary of Johnson &
25   Johnson, and sells a range of products including Lactaid, Viactiv and the branded
26   sucralose sweetener Splenda. Defendant is a Delaware company headquartered in
27   Fort Washington, Pennsylvania.   Defendant distributes, markets, advertises, and
28   sells Nectresse in California and throughout the rest of the United States.

-6-

**First Amended Class Action Complaint**

16.     Defendant Johnson & Johnson is an American multinational medical devices, pharmaceutical and consumer packaged goods manufacturer. Defendant is based in New Jersey.

17.     The use of the term "defendants" or "Defendants" in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the Defendants identified in this Complaint, but also all Defendants designated as DOES 1 through 10, inclusive, as though the term "Defendants" was followed in each and every instance throughout this Complaint with the phrase "and each of them jointly and severally, including all named Defendants and Defendants included herein and sued under the fictitious names of DOES 1 through 10, inclusive."

18.     Plaintiff is informed and believes, and thereon alleges, that Defendants, at all times herein mentioned, were the partners, joint venturers, subsidiaries, successors in interest, managing agent, merged entities, agents, alter egos, part of a jointly owned, managed, and/or operated business enterprise, and/or employees of each other Defendant and in doing the acts, omissions, and things alleged herein were acting as such and within the scope of their authority as such agents and employees and with the permission and consent of all other Defendants.   Plaintiff is informed and believes, and thereon alleges, that Defendants have, and at all times herein mentioned had, a joint economic and business interest, goal and purpose in the products that are the subject of this lawsuit.

## ALLEGATIONS OF FACT

### A.     Defendants' False and Misleading Statements

19.     Nectresse® Natural No Calorie Sweetener is manufactured, distributed, marketed, advertised, and sold by McNeill to consumers as a tabletop sweetener for food and beverages.

20.     Throughout the Class Period, McNeill engaged in, and Plaintiff and

-7-

**First Amended Class Action Complaint**

1  members of the Classes were exposed to, a long-term advertising campaign in

2  which McNeill utilized various forms of media including, but not limited to, print

3  advertising on the Nectresse label and television commercials.   Since McNeill

4  announced the launch of Nectresse® 100% Natural No Calorie Sweetener in

5  2012, McNeill consistently has made certain representations in its labeling,

6  advertising, and marketing that are false and misleading.   To accomplish this,

7  McNeill uses an integrated, nationwide messaging campaign to consistently

8  convey the deceptive and misleading message that Nectresse is a natural

9  sweetener primarily made from the monk fruit plant.   This message, *at a*

10 *minimum,* is conveyed at the point of purchase on the Nectresse packaging and

11 labeling.   Thus, all consumers are exposed to the same message whether viewed in

12 television commercials or on the label.

13    21.   During the Class Period, Plaintiff was introduced to Nectresse

14 through its labeling and advertising.

15    22.   Specifically, McNeill states on Nectresse® 100% Natural No Calorie

16 Sweetener packaging and labeling:

17    • Nectresse® 100% Natural No Calorie Sweetener

18    • 100% Natural

19    • It's 100% natural with nothing artificial

20 Additionally, the packing and labeling describe Monk Fruit and Erythitol as

21 following:

22       • Monk Fruit is a round, green melon that grows on vines
         on remote mountaintops in central Asia. The fruit has
23       been cultivated for centuries. An extract from the fruit
         has been recently re-discovered as an ingredient ideally
24       suited for sweetening foods and beverages. Monk Fruit
         Extract is about 150X sweeter than sugar and
25       contributes zero calories per serving of NECTRESSE™
26       Natural No Calorie Sweetener.

27

28

-8-
**First Amended Class Action Complaint**

- Erythritol is an all-natural, sugar alcohol that is naturally fermented from sugars and is found in many vegetables and fruits.



23.    These statements mislead the consumer into believing that the Product is a natural sweetener primarily made from the monk fruit plant when, in fact, the Product is composed of predominantly synthetic erythritol and only a minute quantity of monk fruit-derived Magou-VTM, which is purified through a harsh chemical process and is not the same as natural crude monk fruit.

24.    Plaintiff and the Classes reasonably understood the Product's packaging to mean that the Product is a natural sweetener primarily made from the monk fruit plant and relied on such representations in making their purchases of the Product.

**B.    Nectresse is Not Primarily Made from the Monk Fruit Plant**

25.    Although McNeill leads consumers to believe that Nectresse is primarily made from the monk fruit plant, Nectresse actually is made predominantly with synthetic erythritol.  Plaintiff's calculations indicate that Nectresse is *approximately 83%* synthetic erythritol.  That Nectresse is almost entirely made with a synthetic ingredient is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.

-9-

26.     No reasonable consumer would know or have reason to know that Nectresse contains such a *minute* amount of the monk fruit-derived ingredient, Magou-VTM.  The quantity of Magou-VTM in Nectresse is within the exclusive knowledge of McNeill and is not known to ordinary consumers, including Plaintiff and members of the Classes. McNeill actively conceals this material fact from consumers, including Plaintiff and members of the Classes.   McNeill's representations that Nectresse is made from the monk fruit plant is, at best, an incomplete partial disclosure.

**C.      Nectresse is Not a *Natural* Sweetener**

> **1.      Magou-VTM is Not the Same as Natural Crude Monk Fruit**

27.     Not only is there but a miniscule amount of monk fruit in Nectresse, but the highly processed, high purity monk fruit extract Magou-VTM in Nectresse is not what most consumers, including Plaintiff and members of the Classes, consider to be natural monk fruit.

28.     Magou-VTM is a highly purified form of monk fruit extract, which (as discussed below) is obtained through a harsh and unnatural chemical purification process.  So, while the highly processed Magou-VTM in Nectresse is derived from the monk fruit plant, it is not the same as the natural monk fruit. This distinction is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.

29.     In light of the above, no reasonable consumer would know, or have reason to know, that the monk fruit extract in Nectresse is highly processed Magou-VTM.  This information is within the exclusive knowledge of McNeill and is not known to ordinary consumers, including Plaintiff and members of the Classes.  McNeill actively conceals this material fact from consumers, including Plaintiff and members of the Classes.  McNeill's representation that Nectresse is made from the monk fruit plant is misleading.

-10-

**First Amended Class Action Complaint**

2.    **The Unnatural Processing and Synthetic Manufacturing of the Ingredients in Nectresse**

a.    *Magou-VTM Is Created Through a Harsh Chemical Process that Includes Washing Crude Monk Fruit Extract with Ethanol and Styrene & Vinylbenzene resin*

30.    McNeil sources its Magou-VTM from a third party that creates high purity Magou-VTM by first extracting the crude monk fruit from the monk fruit. (FDA Submission., *Determination of the GRAS Status Of the Use Of Luo Han Fruit Concentrate.*)   The monk fruit is mechanically crushed or shredded.   The macerated fruit is then decocted with deionized water, cooled, filtered through an ultrafiltration membrane and then passed through a pressurized column filled with the resin divinylbeneze copolymer.   After treatment with the resin, the adhered material is essentially washed with an aqueous ethanol solution.   This process frees virtually all of the absorbed material from the resin.   The ethanol and bound water is then condensed and recycled away.

31.    The liquid is then decolorized by contacting the mother liquid with a styrene divinylbenzene resin.   The mother liquid is then concentrated to approximately 40% soluble solids and spray-dried at 120°C.   Any remaining water and thanol is removed at this time.

32.    At the end of each run, the resin is regenerated by flushing with a solution of calcium hydroxide, followed by filtered water.   Next, a solution of hydrochloric acid is introduced to restore the neutral pH of the resin.   Finally the column is flushed with filtered water.

33.    That Magou-VTM is obtained through a harsh chemical process is material to consumers, including Plaintiffs and members of the Classes, who are seeking to consume natural products.   Consumers, including Plaintiff and members of the Classes, do not consider a product with an ingredient that is harshly chemically processed to be natural.

-11-

**First Amended Class Action Complaint**

34.    For instance, the U.S. Department of Agriculture ("USDA") takes into account the level of processing in its policy on natural claims on food labeling.  The USDA defines a product as "natural" when "(1) The product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than *minimally processed*."   *See* U.S. Department of Agriculture, Food Safety and Inspection Serv., "Natural Claims" in FOOD STANDARDS AND LABELING POLICY BOOK (revised August 2005).   According to the USDA, minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, *e.g.*, smoking, roasting, freezing, drying, and fermenting. *Id.*

35.    No reasonable consumer would know, or have reason to know, that Magou-VTM is achieved through a harsh chemical process.  This information is within the exclusive knowledge of McNeill and its suppliers and is not known to ordinary consumers, including Plaintiff and members of the Classes.   McNeill actively conceals this material fact from consumers, including Plaintiff and members of the Classes. McNeill's representation that Nectresse is made from the monk fruit plant and that its product can be produced through a simple 5 step process ("pick, crush, infuse, dry, blend (with other natural sweeteners)") is misleading.

### b.  The Erythritol Used in Nectresse is Also Synthetic

36.    McNeill represents to consumers on, *inter alia*, its website that erythritol is "an all-natural, sugar alcohol that is naturally fermented from sugars and is found in many vegetables and fruits." What McNeill fails to disclose is that the erythritol used in Nectresse is synthetic.

37.    Synthetic erythritol is manufactured by first chemically extracting starch from corn and then converting the starch to glucose through the

-12-
**First Amended Class Action Complaint**

biochemical process of enzymatic hydrolysis. The glucose is then fermented utilizing *moniliella pollinis*, a yeast. The fermentation broth is sterilized, filtered, and purified to produce erythritol crystals. This process is not the same process that is used in nature to produce the erythritol that is "found in many vegetables and fruit."

38.     That the main ingredient in Nectresse is synthetic is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products. Consumers, including Plaintiff and members of the Classes, do not consider a product with a synthetic ingredient to be natural.

39.     For instance, while the U.S. Food and Drug Administration ("FDA") has not developed a definition for use of the term "natural," the agency does not object to the use of the term if the food does not contain added color, artificial flavors or **synthetic substances**. *See* Food Labeling: Nutrient Content Claims, General Principles Petitions, Definition of Terms, 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991).[3] Similarly, as stated above, the U.S. Department of Agriculture defines a product as "natural" when: "(1) The product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or **synthetic ingredient**; and (2) the product and its ingredients are not more than minimally processed." *See* U.S. Department of Agriculture, Food Safety and Inspection Serv., "Natural Claims" in FOOD STANDARDS AND LABELING POLICY BOOK (revised August 2005).

40.     The term "synthetic" is defined as "of, relating to, or produced by chemical or biochemical synthesis; especially: produced artificially." *See* http://www.merriam-webster.com/dictionary/synthetic (Last visited May 14,

---

[3] *See also* http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm (last visited May 14, 2014).

**First Amended Class Action Complaint**

2014).  Erythritol is a synthetic substance because it is made by man (not nature) through a biochemical process that is not the same as it is made in nature.  Thus, erythritol cannot be considered a natural ingredient.  Nectresse is **estimated to be more than 80% erythritol**, and thus, it also cannot be considered a natural product.

41.    No reasonable consumer would know, or have reason to know, that the erythritol in Nectresse is synthetic.  This information is within the exclusive knowledge of McNeill and is not known to ordinary consumers, including Plaintiff and members of the Classes.  McNeill actively conceals this material fact from consumers, including Plaintiff and members of the Classes.  McNeill's representation that erythritol "is a natural sweetener, produced by natural processes" and that it is "found in many vegetables and fruits" is misleading.

### D.    Consumers Desire Natural Foods

42.    Defendants also realize that consumers are increasingly aware of the relationship between health and diet[4] and, thus, understand the importance and value of descriptors and labels that convey to consumers that a product is natural when considering whether to buy foods.

43.    American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet.  Product package labels are vehicles that convey food quality and nutrition information to consumers that they can and do use to make purchasing decisions.

44.    Surveys have shown that "natural" is one of the top descriptors consumers consider.  *See, e.g.*, David L. Ter Molen and David S. Becker, *An "All Natural" Dilemma: As the Market for "All Natural" Foods Continues to Grow, So Do the Risks for the Unwary* (Nov.  27,  2012)  at  2,

---

[4] *See http://www.multivu.com/mnr/57256-nectresse-natural-no-calorie-sweetener-real-fruit-lisa-ling (last visited May 12, 2014).*

**First Amended Class Action Complaint**

1  http://www.freeborn.com/assets/white_papers/02.12_white-paper-natural-food-
2  update.pdf (last visited May 12, 2013).  Consumers desire natural ingredients in
3  food products for a myriad of reasons, including wanting to live a healthier
4  lifestyle, perceived benefits in avoiding disease, and other chronic conditions, as
5  well as to increase weight loss and avoid chemical additives in their food. *See,*
6  *e.g.,* Food Marketing Institute, *Natural and Organic Foods* (September 2008) at 1,
7  http://www.fmi.org/docs/media-backgrounder/natural_organic_
8  foods.pdf?sfvrsn=2 (last visited May 13, 2014)).  As a result, consumers are
9  willing to pay a higher price for higher quality foods, such as those that are
10 natural. *See, e.g.,* Context Marketing, *Beyond Organic: How Evolving Consumer*
11 *Concerns   Influence   Food   Purchase* (Oct.   2009)  at   6,
12 http://www.contextmarketing.com/insights.html (last visited May 14,2014).

13        45.    Although this segment of the health food market was once a niche
14 market, natural foods are increasingly becoming part of the mainstream food
15 landscape.  According to Natural Foods Merchandiser, a leading information
16 provider for the natural, organic, and healthy products industry, the natural food
17 industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in
18 2009. *See Natural and Organic Products Industry Sales Hit $81 Billion, Natural*
19 *Foods   Merchandiser* (June   1,   2011),   http://www.prnewswire.com/news-
20 releases/natural-and-organic-products-industry-sales-hit-81-billion-
21 122958763.html (last visited May 14, 2014).  The market for all natural and
22 organic foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher
23 than  sales  in  2005.    http://www.marketwire.com/press-release/natural-and-
24 organic-food-and-beverage-market-to-double-by-2015-1525854.htm (last visited
25 May 14, 2014).  Consumer demand for all natural and organic foods is expected to
26 grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in
27 2015. *Id.*

28        46.    In order to capture and tap into this growing market and the hunger

-15-

**First Amended Class Action Complaint**

of consumers for the perceived healthier, chemical-free benefits of natural foods, McNeill labels Nectresse as a natural sweetener primarily made from the monk fruit plant.

47.    A reasonable consumer understands a natural product to be one that does not contain man-made, synthetic ingredients, is not subject to harsh chemical processes, and is only minimally processed.

48.    Consumers lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "natural," especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer.  Thus, reasonable consumers must, and do, rely on food companies such as McNeill to honestly report the nature of a food's ingredients, and food companies such as McNeill intend and know that consumers rely upon food labeling statements in making their purchasing decisions.  Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal law.

49.    Defendants unscrupulously capitalize on consumers' heightened demand for natural products by deceptively labeling, advertising, and marketing Nectresse.

## DAMAGES TO PLAINTIFF AND THE CLASSES

50.    Plaintiff purchased the Product based on Defendants' labeling, advertising, and marketing that the Product is a natural sweetener primarily made from the monk fruit plant.

51.    Defendants manufactured, distributed, and sold products that are misbranded.  Misbranded products cannot be legally manufactured, distributed, sold, or held, and have no economic value and are legally worthless as a matter of law.

-16-

**First Amended Class Action Complaint**

EXHIBIT B                           26

52.     Moreover, Plaintiff and the members of the Classes would not have purchased and/or paid a premium to purchase the Product over comparable products that do not purport to be natural.

53.     As set forth in the chart below, the Product costs more than comparable products that do not purport to be natural.

| Product | Price | Price per packet | Premium paid per packet versus … |
|---------|-------|------------------|-------------------------------------|
| Nectresse – 40 count box | $3.99 | $0.0975 | |
| Splenda – 50 count box | $2.99 | $0.0598 | $0.0377 |
| Sweet 'N Low – 100 count box | $2.49 | $0.0249 | $0.0726 |

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS

54.     Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the claims sued upon herein until immediately prior to commencing this civil action.

55.     Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

56.     Because of the self-concealing nature of Defendants' actions and their affirmative acts of concealment, Plaintiff and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

57.     Defendants continue to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendants' unlawful conduct.  Therefore, Plaintiff and the Classes submit that each instance that Defendants engaged in the conduct complained of herein and each instance

-17-
**First Amended Class Action Complaint**

1   that a member of any Class purchased Nectresse constitutes part of a continuing

2   violation and operates to toll the statutes of limitation in this action.

3       58.   Defendants are estopped from relying on any statute of limitations

4   defense because of their unfair or deceptive conduct.

5       59.   Defendants' conduct was and is, by its nature, self-concealing. Still,

6   Defendants, through a series of affirmative acts or omissions, suppressed the

7   dissemination of truthful information regarding their illegal conduct, and actively

8   have foreclosed Plaintiff and the Classes from learning of their illegal, unfair,

9   and/or deceptive acts. These affirmative acts included concealing the amount of

10  Magou-VTM in Nectresse, that Magou-VTM is not the same as natural crude

11  monk fruit extract, and that the erythritol McNeill uses in Nectresse is synthetic.

12      60.   By reason of the foregoing, the claims of Plaintiff and the Classes are

13  timely under any applicable statute of limitations, pursuant to the discovery rule,

14  the equitable tolling doctrine, and fraudulent concealment.

15              **CLASS ACTION ALLEGATIONS**

16      61.   Plaintiff brings this action individually and on behalf of all other

17  persons similarly situated.  The Classes which Plaintiff seeks to represent

18  comprise:

19      a. All persons in California who purchased Nectresse from introduction

20          in 2012 until the date notice is disseminated for personal or

21          household use, and not for resale or distribution purposes.

22          Specifically excluded from this Class are Defendant; the officers,

23          directors, or employees of Defendant; any entity in which Defendant

24          has a controlling interest; and any affiliate, legal representative, heir,

25          or assign of Defendant (California Class).  Also excluded are those

26          who assert claims for personal injury as well as any federal, state, or

27          local governmental entities, any judicial officer presiding over this

28          action and the members of his/her immediate family and judicial

-18-
**First Amended Class Action Complaint**

1  staff, and any juror assigned to this action.

2  b. All persons in the United States outside of California who purchased
3  Nectresse from its introduction in 2012 until the date notice is
4  disseminated for personal or household use, and not for resale or
5  distribution purposes. Specifically excluded from this Class are
6  Defendant; the officers, directors, or employees of Defendant; any
7  entity in which Defendant has a controlling interest; and any affiliate,
8  legal representative, heir, or assign of Defendant (National Class).
9  Also excluded are those who assert claims for personal injury as well
10  as any federal, state, or local governmental entities, any judicial
11  officer presiding over this action and the members of his/her
12  immediate family and judicial staff, and any juror assigned to this
13  action.

14  c. All persons who reside in states in the United States outside of
15  California with similar consumer protection laws, breach of express
16  warranty laws and breach of implied warranty law, who purchased
17  Nectresse from its introduction in 2012 until the date notice is
18  disseminated for personal or household use, and not for resale or
19  distribution purposes (Consumer Protection Class). Specifically
20  excluded from this Class are Defendant; the officers, directors, or
21  employees of Defendant; any entity in which Defendant has a
22  controlling interest; and any affiliate, legal representative, heir, or
23  assign of Defendant. Also excluded are those who assert claims for
24  personal injury as well as any federal, state, or local governmental
25  entities, any judicial officer presiding over this action and the
26  members of his/her immediate family and judicial staff, and any juror
27  assigned to this action.

28  62. The Classes are sufficiently numerous, as each includes thousands of

-19-

**First Amended Class Action Complaint**

persons who have purchased the Product.  Thus, joinder of such persons in a single action or bringing all members of the Classes before the  Court is impracticable for purposes of Rule 23(a)(1).  The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court.  The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

63.     There are questions of law and fact common to each Class for purposes of Rule 23(a)(2), including whether Defendants' labels and packaging include uniform misrepresentations that misled Plaintiff and the other members of the Classes to believe the Product is natural and made primarily from the monk fruit plant.  The members of each Class were and are similarly affected by having purchased Nectresse for its intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendants as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Classes.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

64.     Plaintiff asserts claims that are typical of the claims of each respective Class for purposes of Rule 23(a)(3).  Plaintiff and all members of each respective Class have been subjected to the same wrongful conduct because they have purchased that Product, which is not natural as represented.  Plaintiff paid a premium for the Product, on the belief it was natural, over similar alternatives that did not make such representations.  Plaintiff and the members of each Class have thus all overpaid for the Product.

65.     Plaintiff will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Rule 23(a)(4).  Plaintiff has no interests antagonistic to those of other members of each respective Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent her.  Plaintiff

-20-
**First Amended Class Action Complaint**

anticipates no difficulty in the management of this litigation as a class action.

66.   Class certification is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole.   Defendants utilize an integrated, nationwide messaging campaign that includes uniform misrepresentations that misled Plaintiff and the other members of each Class.

67.   Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of each Class.   Among these common questions of law and fact are:

a.   whether Defendants misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of Nectresse;

b.   whether Defendants' labeling of Nectresse is likely to deceive the members of each Class;

c.   whether Defendants' conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

d.   whether Defendants represented that Nectresse has characteristics, benefits, uses, or qualities that it does not have;

e.   whether Defendants' acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of Nectresse violated the laws alleged herein;

f.   whether Plaintiff and members of the Classes are entitled to injunctive and other equitable relief; and

g.   whether Defendants were unjustly enriched by their conduct.

68.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of each respective Class.

-21-

**First Amended Class Action Complaint**

1   Similar or identical statutory and common law violations and deceptive business
2   practices are involved. Individual questions, if any, pale by comparison to the
3   numerous common questions that predominate.

4          69.    The injuries sustained by Plaintiff and the members of each Class
5   flow, in each instance, from a common nucleus of operative facts – Defendants'
6   misconduct.

7          70.    Plaintiff and the members of each Class have been damaged by
8   Defendants' misconduct. The members of each Class have paid for a product that
9   would not have been purchased in the absence of Defendants' deceptive scheme,
10  or, alternatively, would have been purchased at a lesser price.

11         71.    Proceeding as a class action provides substantial benefits to both the
12  parties and the Court because this is the most efficient method for the fair and
13  efficient adjudication of the controversy. Members of each Class have suffered
14  and will suffer irreparable harm and damages as a result of Defendants' wrongful
15  conduct. Because of the nature of the individual claims of the members of each
16  Class, few, if any, could or would otherwise afford to seek legal redress against
17  Defendants for the wrongs complained of herein, and a representative class action
18  is therefore the appropriate, superior method of proceeding and essential to the
19  interests of justice insofar as the resolution of claims of the members of each Class
20  is concerned. Absent a representative class action, members of each Class would
21  continue to suffer losses for which they would have no remedy, and Defendants
22  would unjustly retain the proceeds of its ill-gotten gains. Even if separate actions
23  could be brought by individual members of each Class, the resulting multiplicity
24  of lawsuits would cause undue hardship, burden, and expense for the Court and
25  the litigants, as well as create a risk of inconsistent rulings, which might be
26  dispositive of the interests of the other members of each Class who are not parties
27  to the adjudications and/or may substantially impede their ability to protect their
28  interests.

**First Amended Class Action Complaint**

**FIRST CAUSE OF ACTION**

**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF**

**BUSINESS & PROFESSIONS CODE § 17200,** *et seq.*

**(By Plaintiff and California Class against all Defendants and Does 1-10)**

72.     Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

73.     This cause of action is brought pursuant to *Business and Professions Code* § 17200, *et seq.*

74.     In the advertising of Nectresse, Defendant McNeill makes false and misleading statements regarding the benefits and the efficacy of the Nectresse, particularly as it applies to weight loss and appetite suppression, all as set forth above.

75.     Defendant McNeill does not have the requisite competent and reliable scientific evidence to support the claims about the Nectresse made in Defendants' advertising.

76.     Defendant McNeill is aware that the claims that it makes about the Nectresse are false, misleading and unsubstantiated.

77.     As alleged in the preceding paragraphs, the misrepresentations by Defendant McNeill of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17200.

78.     In addition, Defendant McNeill's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitute unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

-23-

79.    There were reasonably available alternatives to further Defendant McNeill's legitimate business interests, other than the conduct described herein.

80.    All of the conduct alleged herein occurs and continues to occur in Defendant McNeill's business. Defendant McNeill's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

81.    Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of the Nectresse. Likewise, Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

## SECOND CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF
### BUSINESS & PROFESSIONS CODE § 17500, *et seq.*

**(By Plaintiff and California Class against all Defendants and Does 1-10)**

82.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

83.    This cause of action is brought pursuant to *Business and Professions Code* § 17500, *et seq.*

84.    In its advertising of Nectresse, Defendants make false and misleading statements regarding the benefits and the efficacy of Nectresse, particularly as it applies to natural make up of Nectresse, all as set forth above.

85.    Defendants do not have any competent and reliable scientific evidence to support the claims about Nectresse made in Defendants' advertising.

-24-
**First Amended Class Action Complaint**

86.    Defendants are aware that the claims that they make about Nectresse are false, misleading and unsubstantiated.

87.    As alleged in the preceding paragraphs, the misrepresentations by Defendants of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17500.

88.    In addition, Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

89.    Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of Nectresse.  Likewise, Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

## THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq.*

**(By Plaintiff and California Class against all Defendants and Does 1-10)**

90.    Plaintiff repeats and realleges all the allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

91.    This cause of action is brought pursuant to *Civil Code* § 1750, *et*

-25-

*seq.*, the Consumers Legal Remedies Act.

92.     The Consumer Class consists of thousands of persons, the joinder of whom is impracticable.

93.     There are questions of law and fact common to the classes, which questions are substantially similar and predominate over questions affecting the individual members, including but not limited to:

    (a) Whether Defendants represented that Nectresse has characteristics, benefits, uses or quantities which it does not have;

    (b) Whether the existence, extent and significance of the major misrepresentations regarding the purported benefits, characteristics and efficacy of Nectresse violate the Act; and

    (c) Whether Defendants knew of the existence of these misrepresentations.

94.     The policies, acts, and practices heretofore described were intended to result in the sale of Nectresse to the consuming public and violated and continue to violate § 1770(a)(5) of the Act by representing that Nectresse has characteristics, benefits, uses or quantities which it does not have.

95.     Defendants fraudulently deceived Plaintiff and the Classes by representing that Nectresse has certain characteristics, benefits, uses and qualities which it does not have.  In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Classes, specifically and not limited to that Nectresse is natural.  Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Classes and depriving them of their legal rights and money.

96.     Defendants knew that Nectresse was and is not natural as represented in Defendants' advertisements and on Defendants' packaging.

97.     Defendants' actions as described hereinabove were done with conscious disregard of Plaintiff's rights and Defendants were wanton and malicious in their concealment of the same.

-26-
**First Amended Class Action Complaint**

98.     Pursuant to § 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendants including, but not limited to, an order enjoining Defendants from distributing such false advertising and misrepresentations.    Plaintiff shall be irreparably harmed if such an order is not granted.

99.     Pursuant to Civil Code §1782, Plaintiff gave Defendants notice by letter dated May 29, 2014, by certified mail, of the particular violations of Civil Code § 1770.    The Notice requested that Defendants rectify the problems associated with the actions alleged in this Complaint, and give notice to all affected consumers of its intent to so act. Defendants have not yet responded to this Notice.    Plaintiff intends to amend her complaint and seek monetary damages should Defendants fail to properly respond within the statutory timeframe.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(By Plaintiff, California Class and National Class**

**Against all Defendants and Does 1-10)**

100.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

101.   Plaintiff brings this claim individually, as well as on behalf of members of the nationwide Class and California Class pursuant California law. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating

-27-
**First Amended Class Action Complaint**

1  to the elements of unjust enrichment between the different jurisdictions from
2  which class members will be drawn, California law applies to the claims of the
3  Class.

4       102.   In the alternative, Plaintiff brings this claim individually as well as on
5  behalf of the California Class.

6       103.  At all times relevant hereto, Defendants deceptively labeled,
7  marketed, advertised, and sold Nectresse to Plaintiff and the Class.

8       104.  Plaintiff and members of the Class conferred upon Defendants non-
9  gratuitous payments for Nectresse that they would not have due to Defendants'
10  deceptive labeling, advertising, and marketing.  Defendants accepted or retained
11  the non-gratuitous benefits conferred by Plaintiff and members of the Class, with
12  full knowledge and awareness that, as a result of Defendants' deception, Plaintiff
13  and members of the Class were not receiving a product of the quality, nature,
14  fitness, or value that had been represented by Defendants and reasonable
15  consumers would have expected.

16       105.  Defendants have been unjustly enriched in retaining the revenues
17  derived from purchases of Nectresse by Plaintiff and members of the Class, which
18  retention under these circumstances is unjust and inequitable because Defendants
19  misrepresented that Nectresse is a natural sweetener primarily made from the
20  monk fruit plant, when in fact it is not, which caused injuries to Plaintiff and
21  members of the Class because they paid a price premium due to the mislabeling of
22  Nectresse.

23       106.  Retaining the non-gratuitous benefits conferred upon Defendants by
24  Plaintiff and members of the Class under these circumstances made Defendants'
25  retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants
26  must pay restitution to Plaintiff and members of the Class for their unjust
27  enrichment, as ordered by the Court.
28  / / /

-28-
**First Amended Class Action Complaint**

## FIFTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(By Plaintiff, on behalf of herself, the California Class and
Consumer Protection Class Against all Defendants and Does 1-10)**

107.  Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

108.  Plaintiff brings this Count individually under the laws of the state where she purchased Nectresse and on behalf of the California Class and Consumer Protection Class (in states having similar laws regarding express warranties).

109.  Defendants' representations, as described herein, are affirmations by Defendants that Nectresse is a natural sweetener primarily made of monk fruit. Defendants' representations regarding Nectresse are made to Plaintiff and the other members of the Classes at the point of purchase and are part of the description of the goods.  Those promises constituted express warranties and became part of the basis of the bargain, between Defendants on the one hand, and Plaintiff and the Classes on the other.

110.  In addition, or in the alternative, Defendants made each of their above-described representations to induce Plaintiff and the Classes to rely on such representations, and they each did so rely on Defendants' representations as a material factor in their decisions to purchase Nectresse.  Plaintiff and other members of the Classes would not have purchased Nectresse but for these representations and warranties.

111.  Nectresse did not, in fact, meet the representations Defendants made about Nectresse, as described herein.

112.  At all times relevant to this action, Defendants falsely represented that Nectresse was a natural sweetener primarily made from the monk fruit plant, when in fact it is not natural and is not primarily made from the monk fruit plant.

-29-

**First Amended Class Action Complaint**

113. At all times relevant to this action, Defendants made false representations in breach of the express warranties and in violation of state express warranty laws, including:

a.   Alaska St. §45.02.313;

b.   Ariz. Rev. Stat. Ann. §47-2313;

c.   Ark. Code Ann. §4-2-313;

d.   Cal. Com. Code §2313;

e.   Colo. Rev. Stat. §4-2-313;

f.   Conn. Gen. Stat. Ann. §42a-2-313;

g.   D.C. Code §28:2-313;

h.   Fla. Stat. §672.313;

i.   Haw. Rev. Stat. §490:2-313;

j.   810 Ill. Comp. Stat. 5/2-313;

k.   Ind. Code §26-1-2-313;

l.   Kan. Stat. Ann. §84-2-313;

m.   La. Civ. Code. Ann. art. 2520;

n.   Maine Rev. Stat. Ann. 11 §2-313;

o.   Mass. Gen. Laws Ann. 106 §2-313;

p.   Minn. Stat. Ann. §336.2-313;

q.   Miss. Code Ann. §75-2-313;

r.   Mo. Rev. Stat. §400.2-313;

s.   Mont. Code Ann. §30-2-313;

t.   Neb. Rev. Stat. §2-313;

u.   Nev. Rev. Stat. §104.2313;

v.   N.H. Rev. Stat. Ann. §382-A:2-313;

w.   N.J. Stat. Ann. §12A:2-313;

x.   N.M. Stat. Ann. §55-2-313;

y.   N.Y. U.C.C. Law §2-313;

-30-

**First Amended Class Action Complaint**

z.   N.C. Gen. Stat. Ann. §25-2-313;

aa.   Okla. Stat. Ann. tit. 12A, §2-313;

bb.   Or. Rev. Stat. §72.3130;

cc.   Pa. Stat. Ann. tit. 13, §2313;

dd.   R.I. Gen. Laws §6A-2-313;

ee.   S.C. Code Ann. §36-2-313;

ff.   S.D. Codified Laws. §57A-2-313;

gg.   Tenn. Code Ann. §47-2-313;

hh.   Tex. Bus. & Com. Code Ann. §2.313;

ii.   Utah Code Ann. §70A-2-313;

jj.   Vt. Stat. Ann. tit. 9A§2-313;

kk.   Wash. Rev. Code §62A.2-313;

ll.   W. Va. Code §46-2-313;

mm.   Wyo. Stat. Ann. §34.1-2-313;

114.   The above statutes do not require privity of contract in order to recover for breach of express warranty.

115.   As a proximate result of this breach of warranty by Defendants, Plaintiff and other members of the Classes have been damaged in an amount to be determined at trial because: (a) they paid a price premium due to the deceptive labeling of Nectresse; and (b) Nectresse did not have the composition, attributes, characteristics, nutritional value, health qualities, or value promised.

116.   Wherefore, Plaintiff and the Classes demand judgment against Defendants for compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which Plaintiff and the Classes may be entitled.

/ / /

/ / /

/ / /

-31-
**First Amended Class Action Complaint**

## SIXTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

**(By Plaintiff, on Behalf of Herself, the California Class, the California Class and Consumer Protection Class Against Defendants and Does 1–10)**

117. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

118. Plaintiff brings this Count individually under the laws of the state where she purchased Nectresse and on behalf of the California Class and Consumer Protection Class (in states having similar laws regarding implied warranties).

119. The Uniform Commercial Code §2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. This implied warranty of merchantability acts as a guarantee by the seller that his goods are fit for the ordinary purposes for which they are to be used.

120. Defendants developed, manufactured, advertised, marketed, sold, and/or distributed the Product and represented that the Product was fit for a particular use, specifically that the Product could be used as a natural sweetener primarily made from the monk fruit plant. Contrary to such representations, Defendants failed to disclose that the Product is not natural and is not primarily made from the monk fruit plant, as promised.

121. At all times, the following states listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability:

a. Ala. Code §7-2-314;

b. Alaska Stat. §45.02.314;

c. Ariz. Rev. Stat. Ann. §47-2314;

d. Ark. Code Ann. §4-2-314;

-32-

**First Amended Class Action Complaint**

| | | |
|---|---|---|
| 1 | e. | Cal. Com. Code §2314; |
| 2 | f. | Colo. Rev. Stat. §4-2-314; |
| 3 | g. | Conn. Gen. Stat. Ann. §42a-2-314; |
| 4 | h. | Del. Code Ann. tit. 6 §2-314; |
| 5 | i. | D.C. Code §28:2-314; |
| 6 | j. | Fla. Stat. §672.314; |
| 7 | k. | Ga. Code Ann. §11-2-314; |
| 8 | l. | Haw. Rev. Stat. §490:2-314; |
| 9 | m. | Idaho Code §28-2-314; |
| 10 | n. | 810 Ill. Comp. Stat. Ann. 5/2-314; |
| 11 | o. | Ind. Code Ann. §26-1-2-314; |
| 12 | p. | Iowa Code Ann. §554.2314; |
| 13 | q. | Kan. Stat. Ann. §84-2-314; |
| 14 | r. | Ky. Rev. Stat. Ann. §355.2-314; |
| 15 | s. | La. Civ. Code Ann. art. §2520; |
| 16 | t. | Me. Rev. Stat. Ann. 11 §2-314; |
| 17 | u. | Md. Code Ann. Com. Law §2-314; |
| 18 | v. | Mass. Gen. Laws Ch. 106 §2-314; |
| 19 | w. | Mich. Comp. Laws Ann. §440.2314; |
| 20 | x. | Minn. Stat. Ann. §336.2-314; |
| 21 | y. | Miss. Code Ann. §75-2-314; |
| 22 | z. | Mo. Rev. Stat. §400.2-314; |
| 23 | aa. | Mont. Code Ann. §30-2-314; |
| 24 | bb. | Nev. Rev. Stat. §104.2314; |
| 25 | cc. | N.H. Rev. Stat. Ann. §382-A:2-314; |
| 26 | dd. | N.J. Stat. Ann. §12A:2-314; |
| 27 | ee. | N.M. Stat. Ann. §55-2-314; |
| 28 | ff. | N.Y. U.C.C. Law §2-314; |

-33-

gg.   N.C. Gen. Stat. Ann. §25-2-314;

hh.   N.D. Cent. Code §41-02-314;

ii.   Ohio Rev. Code Ann. §1302.27;

jj.   Okla. Stat. Ann. tit. 12A §2-314;

kk.   Or. Rev. Stat. §72.3140;

ll.   Pa. Stat. Ann. tit. 13 §2314;

mm.   R.I. Gen. Laws §6A-2-314;

nn.   S.C. Code Ann. §36-2-314;

oo.   S.D. Codified Laws §57A-2-314;

pp.   Tenn. Code Ann. §47-2-314;

qq.   Tex. Bus. & Com. Code Ann. §2-314;

rr.   Utah Code Ann. §70A-2-314;

ss.   Va. Code Ann. §8.2-314;

tt.   Vt. Stat. Ann. tit. 9A §2-314;

uu.   W. Va. Code §46-2-314;

vv.   Wash. Rev. Code §62A 2-314;

ww.   Wis. Stat. Ann. §402.314; and

xx.   Wyo. Stat. Ann. §34.1-2-314.

122.   As developer, manufacturer, producer, advertiser, marketer, seller and/or distributor of sweetening products, Defendants are "merchants" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

123.   Further, Defendants are merchants with respect to the Product. Defendants developed, manufactured, produced, advertised, marketed, sold, and/or distributed the Product and represented to Plaintiff and the Classes that they developed the Product as a natural sweetener primarily made from the monk fruit plant as described herein.   Further, Defendants, by selling the Product to Plaintiff and the Classes, have held themselves out as retailers of the Product that

-34-

1   could be used as a natural sweetener primarily made from the monk fruit plant

2   and, in fact, have derived a substantial amount of revenues from the sale of the

3   Product.

4       124.   The Product can be classified as "goods," as defined in the various

5   states' commercial codes governing the implied warranty of merchantability.

6       125.   As a merchant of the Product, Defendants knew that purchasers

7   relied upon them to develop, manufacture, produce, sell, and distribute a product

8   that could be used as a natural sweetener primarily made from the monk fruit

9   plant, as promised.

10      126.   Defendants developed, manufactured, produced, sold, and distributed

11  the Product to consumers such as Plaintiff and the Classes.  They knew that the

12  Product would be used as a natural sweetener primarily made from the monk fruit

13  plant, as promised.

14      127.   Defendants specifically represented in their labeling of the Product

15  that it is a natural sweetener primarily made from the monk fruit plant, as

16  described herein.

17      128.   At the time that Defendants developed, manufactured, sold, and/or

18  distributed the Product, Defendants knew the purpose for which the Product was

19  intended and impliedly warranted that the Product was of merchantable quality

20  and was fit for its ordinary purpose – a natural sweetener primarily made from the

21  monk fruit plant.

22      129.   Defendants breached their implied warranties in connection with the

23  sale of the Product to Plaintiff and members of the Classes.  The Product was not

24  fit for its ordinary purposes and intended use as a natural sweetener primarily

25  made of monk fruit, because the Product is not natural and is predominantly made

26  of erythritol.

27      130.   Defendants had actual knowledge that the Product was not natural

28  and was not primarily made from the monk fruit plant as promised and thus was

-35-

**First Amended Class Action Complaint**

not fit for its ordinary purpose and Plaintiff therefore was not required to notify Defendants of their breach.   If notice is required, Plaintiff and the Classes adequately have provided Defendants of such notice through the filing of this lawsuit.

131.   As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and other members of the Classes have been injured.  Plaintiff and the other members of the Classes would not have purchased the Product but for Defendants' representations and warranties.   Defendants misrepresented the character of the Product, which caused injuries to Plaintiff and the other members of the Classes because either they paid a price premium due to the deceptive labeling or they purchased products that were not of a character and fitness as promised and therefore had no value to Plaintiff and the other members of the Classes.

### SEVENTH CAUSE OF ACTION

### VIOLATIONS OF CONSUMER FRAUD LAWS

**(By Plaintiff, on Behalf of Herself, the California Class, and Consumer Protection Class against all Defendants and Does 1-100)**

132.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

133.   Plaintiff brings this Count individually under the laws of the state where she purchased Nectresse and on behalf of all other persons who purchased Nectresse in states having similar laws regarding consumer fraud and deceptive trade practices.

134.   Plaintiff and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the state in which they purchased the Product.

135.   The consumer protection laws of the State in which Plaintiff and the other members of the Classes purchased the Product declare that unfair or

-36-

1    deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

2       136.   Forty States and the District of Columbia have enacted statutes

3    designed to protect consumers against unfair, deceptive, fraudulent, and

4    unconscionable trade and business practices and false advertising and that allow

5    consumers to bring private and/or class actions.  These statutes are found at:

6       a.    Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

7       b.    Alaska Unfair Trade Practices and Consumer Protection Act, Alaska

8             Code §45.50.471 *et seq.*;

9       c.    Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101

10            *et seq.*;

11      d.    California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et

12            seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof.

13            Code §17200 *et seq.*;

14      e.    Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et

15            seq.*;

16      f.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a

17            *et seq.*;

18      g.    Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et

19            seq.*;

20      h.    District of Columbia Consumer Protection Procedures Act, D.C.

21            Code §28 3901 *et seq.*;

22      i.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann.

23            §501.201 *et seq.*;

24      j.    Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et

25            seq.*;

26      k.    California Unfair and Deceptive Practices Act, California Revised

27            Statues §480-1 *et seq.*, and California Uniform Deceptive Trade

28            Practices Act, Haw. Rev. Stat. §481A-1 *et seq.*;

-37-

**First Amended Class Action Complaint**

l.   Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

m.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*;

n.   Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et seq.*;

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401 *et seq.*;

q.   Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211 *et seq.*,

r.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.   Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.   Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.   Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.   Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101 *et seq.*;

x.   Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

-38-

**First Amended Class Action Complaint**

y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

z.   New Hampshire Consumer Protection Act, N.H. Rev. Stat. §358-A:1 *et seq.*;

aa.   New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

bb.   New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

cc.   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

dd.   North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

ee.   Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.   Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

gg.   Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh.   Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1 *et seq.*;

ii.   South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq.*;

jj.   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1 *et seq.*;

kk.   Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et seq.*;

ll.   Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

-39-

**First Amended Class Action Complaint**

mm.   Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et seq.*;

nn.   West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101 *et seq.*; and

oo.   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

137.   The Product constitutes a product to which these consumer protection laws apply.

138.   In the conduct of trade or commerce regarding its production, marketing, and sale of the Product, Defendants engaged in one or more unfair or deceptive acts or practices including, but not limited to, uniformly representing to Plaintiff and each member of the Classes by means of their packaging and labeling of the Product that it is a natural sweetener primarily made from the monk fruit plant, as described herein.

139.   Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

140.   Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

141.   Defendants used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

142.   Plaintiff and the other members of the Classes did so rely.

143.   Plaintiff and the other members of the Classes purchased the Product produced by Defendants which misrepresented the characteristics and nature of the Product.

144.   Plaintiff and the other members of the Classes would not have purchased the Product but for Defendants' deceptive and unlawful acts.

145.   As a result of Defendants' conduct, Plaintiff and the other members of the Classes sustained damages in amounts to be proven at trial.

146.   Defendants' conduct showed complete indifference to, or conscious

1    disregard for, the rights and safety of others such that an award of punitive and/or

2    statutory damages is appropriate under the consumer protection laws of those

3    states that permit such damages to be sought and recovered.

4    **PRAYER FOR RELIEF**

5          WHEREFORE, Plaintiff prays for judgment and relief against Defendants

6    as follows (cause of action number three is excluded from the below to the extent

7    the remedy includes monetary damages):

8          A.     That the Court certify the nationwide Class and the California Class

9    under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as

10   Class Representative and her attorneys as Class Counsel to represent the members

11   of the Classes;

12         B.     That the Court declare that Defendants' conduct violates the statutes

13   referenced herein;

14         C.     That the Court preliminarily and permanently enjoin Defendants

15   from conducting their business through the unlawful, unfair, or fraudulent

16   business acts or practices, untrue, and misleading labeling and marketing and

17   other violations of law described in this Complaint;

18         D.     That the Court order Defendants to conduct a corrective advertising

19   and information campaign advising consumers that the Product does not have the

20   characteristics, uses, benefits, and quality Defendants have claimed;

21         E.     That the Court order Defendants to implement whatever measures are

22   necessary to remedy the unlawful, unfair, or fraudulent business acts or practices,

23   untrue and misleading advertising, and other violations of law described in this

24   Complaint (excluded from this request is cause of action number three to the

25   extent the remedy includes monetary damages);

26         F.     That the Court order Defendants to notify each and every individual

27   and/or business who purchased the Product of the pendency of the claims in this

28   action in order to give such individuals and businesses an opportunity to obtain

-41-

**First Amended Class Action Complaint**

1  restitution from Defendants (excluded from this request is cause of action number

2  three);

3        G.    That the Court order Defendants to pay restitution to restore to all

4  affected persons all funds acquired by means of any act or practice declared by

5  this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue

6  or misleading labeling, advertising, and marketing, plus pre- and post-judgment

7  interest thereon(excluded from this request is cause of action number three);

8        H.    That the Court order Defendants to disgorge all monies wrongfully

9  obtained and all revenues and profits derived by Defendants as a result of its acts

10  or practices as alleged in this Complaint (excluded from this request is cause of

11  action number three);

12        I.    That the Court award damages to Plaintiff and the Classes (excluded

13  from this request is cause of action number three);

14        J.    The common fund doctrine, and/or any other appropriate legal theory

15  (excluded from this request is cause of action number three); and

16        K.    that the Court grant such other and further relief as may be just and

17  proper (excluded from this request is cause of action number three to the extent

18  the remedy includes monetary damages).

19

20  DATED:  August 14, 2014         **MARLIN & SALTZMAN, LLP**

21

22                    By: _____

23                         Marcus J. Bradley, Esq.

24                         Kiley Lynn Grombacher, Esq.
                          Attorneys for Plaintiff

25  ///

26  ///

27  ///

28  ///

-42-

**First Amended Class Action Complaint**

1

**JURY DEMAND**

2

Plaintiff demands a trial by jury on all causes of action so triable.

3

4      DATED:   August 14, 2014                **MARLIN & SALTZMAN, LLP**

5

6                                    By: _____

7                                          Marcus J. Bradley, Esq.
                                           Kiley Lynn Grombacher, Esq.
8                                          Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**First Amended Class Action Complaint**

1  **MARLIN & SALTZMAN, LLP**
   Marcus J. Bradley, Esq. (SBN 174156)
2  Kiley Lynn Grombacher (SBN 245960
   29229 Canwood Street, Suite 208
3  Agoura Hills, California  91301
   Telephone:   (818) 991-8080
4  Facsimile:   (818) 991-8081
   mbradley@marlinsaltzman.com
5  kgrombacher@marlinsaltzman.com

6  Attorneys for Plaintiff

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                         **COUNTY OF VENTURA**

10

11  LORRAINE VIGGIANO, individually and     **CASE NO.** 56-2014-00453587-CU-BC-VTA
    on behalf of all others similarly situated,
12                                           **CLASS ACTION**
               Plaintiff,
13                                           **DECLARATION OF PLAINTIFF**
    v.                                       **LORRAINE VIGGIANO RE PROPER**
14                                           **COUNTY FOR COMMENCEMENT AND**
                                             **TRIAL OF A CLAIM UNDER THE**
15  JOHNSON & JOHNSON, a New Jersey          **CONSUMERS LEGAL REMEDIES ACT**
    company; MCNEIL NUTRITIONALS, LLC,
16  a Pennsylvania limited liability company.; and  [California Civil Code § 1780(d)]
    DOES 1 through 10, inclusive,
17
               Defendants.
18

19

20       I, Lorraine Viggiano, state and declare as follows:

21       1.    I have personal knowledge of the matters stated herein except as to those

22  matters stated on information and belief, which I believe to be true.

23       2.    If called and sworn as a witness, I could and would testify truthfully and

24  competently to the matters stated herein.

25       3.    I am the named Plaintiff in the above-captioned action and submit this

26  Declaration pursuant to California Civil Code section 1780(d).

27       4.    I currently reside in Moorpark, California, located in Ventura County,

28  California.

---

                                   -1-
                 Declaration of Plaintiff Lorraine Viggiano Re Proper County

VENTURA SUPERIOR COURT
**FILED**

MAY 8 0 2014

MICHAEL M. PLANET
Executive Officer and Clerk
BY:_____, Deputy
        M. Ochoa

1       5.    I am informed and believe that Defendant Johnson & Johnson, a New Jersey

2   company, has its principal place of business in New Jersey and is doing business in

3   Ventura County.

4       6.    I am informed and believe that Defendant McNeil Nutritionals, LLC, has its

5   principal place of business in Fort Washington, Pennsylvania and is doing business in

6   Ventura County.

7       7.    Ventura County is within the jurisdiction of the Calfornia Superior Court,

8   County Ventura.  Accordingly, the California Superior Court, County of Ventura, which is

9   located in Ventura, California, is the proper place for the trial of this action under

10  California Civil Code section 1780(d), and this action is properly commenced in that Court.

11      I declare under penalty of perjury, under the laws of the State of California and the

12  United States of America, that the foregoing is true and correct.

13  Executed this 29 day of May, 2014, at Moorpark, California.

14

15

16  *Lorraine Viggiano*
    Lorraine Viggiano

17

18

19

20

21

22

23

24

25

26

27

28

-2-
Declaration of Plaintiff Lorraine Viggiano Re Proper County

EXHIBIT B                                   55

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Marcus J. Bradley, Esq. (SBN 174156)<br>Kiley Lynn Grombacher, Esq. (SBN 245960)<br>MARLIN & SALTZMAN, LLP<br>29229 Canwood Street, Suite 208<br>Agoura Hills, CA 91301<br>TELEPHONE NO.: (818) 991-8080 FAX NO.: (818) 991-8081 | VENTURA SUPERIOR COURT<br>**FILED**<br>MAY 3 0 2014<br>MICHAEL D. PLANET<br>Executive Officer and Clerk<br>BY: _____, Deputy |

ATTORNEY FOR *(Name):* Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS: 800 S. Victoria Street
MAILING ADDRESS: 800 S. Victoria Street
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: Main Courthouse

CASE NAME: Viggiano v. Johnson & Johnson

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 56-2014-00453587-CU-BC-VTA |
|---|---|---|---|---|
| ☐ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☒ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☒ Substantial amount of documentary evidence
   d. ☒ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☒ punitive
4. Number of causes of action *(specify):* seven (7)
5. This case ☒ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 5|29|14

Kiley Lynn Grombacher, Esq.
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
SB-010

EXHIBIT B                              56

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.**

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.**

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case-Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rule 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

EXHIBIT B

57

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF VENTURA

800 South Victoria Avenue
Ventura , CA 93009
(805) 654-2609
WWW.VENTURA.COURTS.CA.GOV

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Case Number: 56-2014-00453587-CU-BC-VTA

Your case has been assigned for all purposes to the judicial officer indicated below.

A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in Intervention that names a new party to the underlying action.

| ASSIGNED JUDICIAL OFFICER | COURT LOCATION | DEPT/ROOM |
|---|---|---|
| Hon. Kent Kellegrew | Ventura | 43 |

| HEARING | MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default | |
|---|---|---|

| EVENT DATE | EVENT TIME | EVENT DEPT/ROOM |
|---|---|---|
| 10/27/2014 | 08:15 AM | 22B |

## SCHEDULING INFORMATION

**Judicial Scheduling Information**

**AT THE ABOVE HEARING IS MANDATORY.**
Each party must file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties. If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725).
If proof of service and/or request for entry of default have not been filed: At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed (CCP 177.5, Local Rule 3.17).

**Advance Jury Fee Requirement**
At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150. The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters**
To set an ex parte hearing, contact the judicial secretary in the assigned department. Contact the clerk's office to reserve a date for a law and motion matter.

**Telephonic Appearance**
Telephonic appearance at the Case Management Conference is permitted pursuant to CRC 3.670. In addition, see Local Rule 7.01 regarding notice to the teleconference provider. The court, through the teleconference provider, will contact all parties and counsel prior to the hearing.

Date: 05/30/2014

Clerk of the Court,
By: m. Ochoa
Maria Ochoa, Clerk

VEN-FNR062

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

EXHIBIT B                    58

## SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF VENTURA
## VENTURA

### MINUTE ORDER

DATE: 06/17/2014              TIME: 02:49:00 PM        DEPT: 43
JUDICIAL OFFICER PRESIDING: Kent Kellegrew
CLERK: Hellmi McIntyre
REPORTER/ERM:

CASE NO: 56-2014-00453587-CU-BC-VTA
CASE TITLE: **Viggiano vs. Johnson & Johnson**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Breach of Contract/Warranty

**APPEARANCES**

**NATURE OF PROCEEDINGS:  COMPLEX CASE DESIGNATION**

The court, having reviewed this matter, denies the request to deem this case complex.

This matter is referred to the Case Management Department.

Clerk to give notice.

EXHIBIT B                        59

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA**

Ventura
800  South Victoria Avenue
Ventura, CA 93009

SHORT TITLE: Viggiano vs. Johnson & Johnson

| CLERK'S CERTIFICATE OF SERVICE BY MAIL (Minute Order) | CASE NUMBER: 56-2014-00453587-CU-BC-VTA |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the Minute Order was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at Ventura, California, on 06/18/2014.

Clerk of the Court, by: _____ , Deputy

MARCUS  J BRADLEY
MARLIN & SALTZMAN
29229  CANWOOD STREET #  208
AGOURA HILLS, CA 91301

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

V3 1013a (June 2004)

Code of Civil Procedure , § CCP1013(a)

EXHIBIT B                                       60

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 800 South Victoria Avenue<br>MAILING ADDRESS: 800 South Victoria Avenue<br>CITY AND ZIP CODE: Ventura, CA 93009<br>BRANCH NAME: Ventura | VENTURA SUPERIOR COURT<br>**FILED**<br>Michael D. Planet<br>Executive Officer and Clerk |
| PLAINTIFF:<br> Lorraine Viggiano | |
| DEFENDANT:<br> Johnson & Johnson et.al. | |
| CASE TITLE:<br> Viggiano vs. Johnson & Johnson | **06/26/2014** |
| NOTICE OF CHANGE OF TRACK ASSIGNMENT - COMPLEX CASE | CASE NUMBER:<br>56-2014-00453587-CU-BC-VTA |

The above-entitled case has been designated a Complex Case and is assigned to the Ventura Superior Court Complex Track.

A **Case Management Conference** has been set for 08/25/2014 at 08:30 AM in Department 43 of the above named court. All named defendants must be timely served by plaintiff. All anticipated pretrial events will be calendared at this Case Management Conference. Plaintiff's counsel is ordered to give notice to all named parties within 30 days of this hearing.

The court requires that the parties file a Joint Complex Case Status Report, in pleading format, setting forth the following:

1. A brief summary of the case;
2. All anticipated discovery and estimated completion dates;
3. If monetary damages are sought, the estimated amount of such damages;
4. Whether or not a document repository will be required;
5. The estimated date by which all new parties are to be brought in;
6. The estimated date by which the case will be "at issue";
7. Estimated dates by which site inspections and destructive testing, if any, are to be accomplished;
8. The need for appointment of discovery referee and/or mediators;
9. Any other information the parties believe will be of use to the court in this conference.

The Joint Complex Status Report must be filed with the court at least 5 CALENDAR DAYS PRIOR to the hearing date.

Failure to appear and/or comply with this notice may result in the imposition of sanctions, including but not limited to, dismissal of your case.

See California Rules of Court Rule 3.670 regarding telephonic appearances. In addition, see Local Rule 7.01 regarding notice to the teleconference provider and requirement of an extra copy of title page or notice for the court clerk. The court, through CourtCall Service, will contact all parties and counsel prior to the hearing.

Note: Pursuant to Government Code Section 70616, in addition to the first appearance fee, a complex case fee shall be paid on behalf of each party at the time that party files its first paper in the case.

For questions, please call (805) 645-2609.

Clerk of the Court,

Dated: 06/26/2014

By: _Cabural_

Isabel Cabural, Clerk

VEN-FNR078                                                                                                      Page: 1

**NOTICE OF CHANGE OF TRACK ASSIGNMENT - COMPLEX CASE**

EXHIBIT B                                    61

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

| SHORT TITLE:<br><br>**Viggiano vs. Johnson & Johnson** | CASE NUMBER:<br><br>56-2014-00453587-CU-BC-VTA |
|---|---|

### CLERK'S CERTIFICATE OF MAILING

I certify that I am not a party to this cause. I certify that a true copy of the **NOTICE OF CHANGE OF TRACK ASSIGNMENT - COMPLEX CASE** was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at Ventura, California, on 06/27/2014.

Clerk of the Court,

By: _S. Cabural_

Isabel Cabural, Clerk

MARCUS J BRADLEY
29229 CANWOOD STREET
# 208
AGOURA HILLS, CA 91301

VEN-FNR076

**NOTICE OF CHANGE OF TRACK ASSIGNMENT - COMPLEX CASE**

Page: 2

EXHIBIT B                        62

1

# PROOF OF SERVICE
## F.R.C.P. 5 / C.C.P. § 1013a(3)/ Cal. R. Ct. R. 2.260

2

3   I am a resident of, or employed in, the County of Los Angeles.  I am over the age of 18 and not a
    party to this action.  My business address is:  Carlton Fields Jorden Burt, LLP, 2000 Avenue of
4   the Stars, Suite 530 North Tower, Los Angeles, CA 90067-4707.

5   On **September 17, 2014,** I served the following listed document(s), by method indicated below,
    on the parties in this action:
6

7   ## NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

8

9   ### SEE ATTACHED SERVICE LIST

    ☒ **BY U.S. MAIL**

10  By placing ☐ the original / ☒ a true copy thereof enclosed in a
    sealed envelope(s), with postage fully prepaid, addressed as per
11  the attached service list, for collection and mailing at 2000
    Avenue of the Stars, Suite 530 North Tower, Los Angeles, CA
12  90067-4707, following ordinary business practices.  I am
    readily familiar with Carlton Fields Jorden Burt, LLP's practice
13  for collection and processing of documents for mailing.  Under
    that practice, the document is deposited with the United States
14  Postal Service on the same day as it is collected and processed
    for mailing in the ordinary course of business.

15  ☐ **BY OVERNIGHT DELIVERY**
    By delivering the document(s) listed above in a sealed
16  envelope(s) or package(s) designated by the express service
    carrier, with delivery fees paid or provided for, addressed as per
17  the attached service list, to a facility regularly maintained by the
    express service carrier or to an authorized courier or driver
18  authorized by the express service carrier to receive documents.
    **Note:** Federal Court requirement: service by overnight delivery
19  was made ☐ pursuant to agreement of the parties, confirmed in
    writing, or ☐ as an additional method of service as a courtesy
20  to the parties or ☐ pursuant to Court Order.

    ☐ **BY ELECTRONIC SERVICE via**
    **electronic filing service provider LexisNexis**
    By electronically transmitting the document(s) listed
    above to LexisNexis File and Serve, an electronic
    filing service provider at
    www.fileandserve.lexisnexis.com, from the email
    address _____@cfjblaw.com, at approximately
    _____.  To my knowledge, the transmission was
    reported as complete and without error.  *See* Cal. R.
    Ct. R. 2.253, 2.255, 2.260.

    ☐ **BY EMAIL**
    By electronically transmitting the document(s) listed
    above to the email address(es) of the person(s) set
    forth on the attached service list from the email
    address _____@cfjblaw.com at approximately
    _____.  To my knowledge, the transmission was
    reported as complete and without error.  Service by
    email was made ☐ pursuant to agreement of the
    parties, confirmed in writing, or ☐ as an additional
    method of service as a courtesy to the parties or ☐
    pursuant to Court Order.  *See* Cal. R. Ct. R. 2.260.

21

22       I declare under penalty of perjury under the laws of the State of California and the United
    States that the above is true and correct.  Executed on September 17, 2014 at Los Angeles,
23  California.

24   Maria Rodriguez
    _____          _____
25  Type or Print Name                    Signature

26

27

28

36431580.3

1

## SERVICE LIST

2

3
Marcus J. Bradley, Esq.                    Attorneys for Plaintiff Lorraine
Kiley Lynn Grombacher, Esq.                Viggiano
4
MARLIN & SALTZMAN, LLP
29229 Canwood Street, Suite 208
5
Agoura Hills, California 91301
Telephone:   (818) 991-8080
6
Facsimile:   (818) 991-8081
mbradley@marlinsaltzman.com
7
kgrombacher@marlinsaltzman.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) LORRAINE VIGGIANO | DEFENDANTS ( Check box if you are representing yourself ☐ ) JOHNSON & JOHNSON; MCNEIL NUTRITIONALS, LLC |
|---|---|
| (b) County of Residence of First Listed Plaintiff VENTURA COUNTY, CA (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant MIDDLESEX, NJ (IN U.S. PLAINTIFF CASES ONLY) |
| (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. Marcus J. Bradley; Kiley Lynn Grombacher Marlin & Saltzman, LLP 29229 Canwood Street, Suite 208 Agoura Hills, CA 91301 | Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. Mark A. Neubauer (73728) Carlton Fields Jorden Burt, LLP 2000 Avenue of the Stars, Suite 530 North Tower Los Angeles, CA 90067-4707 Tel. 310-843-6300 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding   ☒ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ Amount not specified

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC §§ 1332 (d); 1453 Class action for alleged fraudulent false advertising

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentance | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☒ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | ☐ 388 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | LA CV14 07250 ~DMG (MRWx) |
|---|---|---|

CV-71 (06/14)                                    CIVIL COVER SHEET                                    Page 1 of 3

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII.   VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☒ Yes  ☐ No | ☒ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1.  Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No |  | ☐ NO.  Continue to Question B.2. |
| If "no," skip to Question C.  If "yes," answer Question B.1, at right. | B.2.  Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1.  Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No |  | ☐ NO.  Continue to Question C.2. |
| If "no, " skip to Question D.  If "yes," answer Question C.1, at right. | C.2.  Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.  Orange County | B.  Riverside or San Bernardino County | C.  Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| D.1.  Is there at least one answer in Column A? | D.2.  Is there at least one answer in Column B? |
|---|---|
| ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. |
|  | Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☒ Yes  ☐ No |

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**  ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?**  ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are related when they:** (1) arise from the same or a closely related transaction, happening, or event; (2) call for determination of the same or substantially related or similar questions of law and fact; or (3) for other reasons would entail substantial duplication of labor if heard by different judges. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: September 16, 2014

MARK A. NEUBAUER

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com