**MARLIN & SALTZMAN, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley Lynn Grombacher (SBN 245960)
29229 Canwood Street, Suite 208
Agoura Hills, California   91301
Telephone:   (818) 991-8080
Facsimile:    (818) 991-8081
mbradley@marlinsaltzman.com
kgrombacher@marlinsaltzman.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORRAINE VIGGIANO, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON, a New Jersey company;  MCNEIL NUTRITIONALS, LLC, a Pennsylvania limited liability company.; and DOES 1 through 10, inclusive,<br><br>              Defendants. | CASE NO.  14-cv-07250-DMG-MRW<br><br>**SECOND AMENDED CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR**<br>1. **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200,** *et seq.*<br>2. **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE §17500,** *et seq.*<br>3. *VIOLATION OF CALIFORNIA CIVIL CODE § 1750.  et seq.*<br>4. **UNJUST ENRICHMENT**<br>5. **BREACH OF EXPRESS WARRANTY**<br>6. **BREACH OF IMPLIED WARRANTY**<br>7. **VIOLATION OF CONSUMER FRAUD LAWS**<br>**JURY TRIAL DEMANDED** |

Plaintiff Lorraine Viggiano ("Plaintiff") alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief and the investigation by Plaintiff's counsel which included, among other things, a review of public documents, marketing materials, and announcements made by McNeil Nutritionals, LLC ("Defendant" or "McNeil") as to all other matters. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.   This action seeks to remedy the unfair, deceptive, and unlawful business practices of McNeil with respect to the marketing, advertising, labeling, and sales of Nectresse® Natural No Calorie Sweetener (the "Product" or "Nectresse® Natural No Calorie Sweetener" or "Nectresse").

2.   Agribusiness behemoth McNeil is in the business of creating innovative and reformulated food and beverage nutritional products. For instance, in addition to Nectresse, McNeil markets SPLENDA® Sweetener Products, VIACTIV® Dietary Supplements, LACTAID® Milk and Dietary Supplements and BENECOL® Products."[1]

3.   McNeil recognizes consumers are increasingly health conscious.[2] To capitalize on this market trend, McNeil began developing and marketing a purportedly natural, sweeter-than-sugar, non-caloric sweetening ingredient for food and beverages known as *Magou-VTM* ("Magou-VTM"). Magou-VTM is an extract of the leaf of the monk fruit plant. McNeil uses Magou-VTM as an ingredient in its tabletop sweetener product, branded as Nectresse®.

---

[1] *See http://www.multivu.com/mnr/57256-nectresse-natural-no-calorie-sweetener-real-fruit-lisa-ling (last visited May 12, 2014).*

[2] *See http://www.multivu.com/mnr/57256-nectresse-natural-no-calorie-sweetener-real-fruit-lisa-ling (last visited May 12, 2014).*

**Second Amended Class Action Complaint
Case No. 14-cv-07250-DMG-MRW**

4.     Since as early as 2012 ("Class Period"), McNeil has manufactured, distributed, and sold Nectresse and consistently has marketed, advertised, and labeled Nectresse as a natural sweetener primarily made from the monk fruit plant.

5.     As part of a scheme to make Nectresse more attractive to consumers, boost its sales, and ultimately increase its profits, McNeil uses terms such as "100% Natural," "Natural No Calorie Sweetener," "Nectresse® sweetener comes from nature," "Made From Monk Fruit" and natural imagery such as the leaves of the monk fruit plant and presentation of the product in a monk fruit "bowl" in labeling, advertising, and marketing materials. (See e.g. examples below)






6.     The use of these terms and natural imagery is designed to, and does,

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

induce consumers, such as Plaintiff and the members of the putative classes, into believing that Nectresse is a natural sweetener primarily made from the monk fruit plant that does not contain ingredients that are either synthetic or harshly chemically processed and, therefore, is a healthy choice and is superior to competing sugar-alternative sweeteners that do not claim to be natural.

7.     However, Defendants' labeling, advertising, and marketing campaign is false and misleading because: (1) McNeil touts the monk fruit plant as the reason Nectresse is natural when, in fact, the monk fruit-derived ingredient, Magou-VTM, is not the natural crude preparation of monk fruit, but rather, is a highly chemically processed and purified form of monk fruit extract; (2) while McNeil labels the product as "Made From Monk Fruit" the monk fruit-derived Magou-VTM comprises **only a minute fraction of** Nectresse which is actually compromised mainly of erythritol (83%); (3) the main ingredient, erythritol, which McNeil also purports to be a natural ingredient derived through natural processes, is not made like it is in nature, but rather is synthetically made; and (4) McNeil describes the process of obtaining monk fruit leaf extract as a simple five-step process: "pick, crush, infuse, dry, blend (with other natural sweeteners)" but does not tell the consumer that, just to produce the "monk fruitextract," its supplier adds ethanol and other chemical resins in a patented multi-step process to purify it.  In short, Nectresse is not made primarily from the monk fruit plant, it is predominantly made of erythritol, and contains only a minute quantity of monk fruit-derived Magou-VTM (not natural crude monk fruit); the erythritol used is not natural, it is synthetic; and, the monk fruit-derived Magou-VTM is harshly purified through chemical processes.  As a result, no reasonable consumer would consider Nectresse to be a natural product.

8.     When purchasing Nectresse, Plaintiff relied on Defendants' misrepresentations that Nectresse is a natural sweetener.  Plaintiff also relied on Defendants' representation that Nectresse was primarily made from the monk fruit

plant.  Plaintiff would not have purchased this product if she had known that Defendants' representations were false and misleading.  Plaintiff and the Classes paid a premium for Nectresse over comparable sugar-alternative sweeteners that did not purport to be natural.  Nectresse is consistently more expensive per packet than sugar-alternative competitors, like Sweet 'N Low and Splenda.  Plaintiff would not have purchased Nectresse had she known the truth.  Plaintiff suffered an injury by purchasing the Product at inflated prices.  Plaintiff did not receive a natural sweetener primarily made from the monk fruit plant; rather, she received a product that is made predominantly of a synthetic ingredient with only a miniscule amount of Magou-VTM.

9.     Defendants' conduct of falsely marketing, advertising, labeling, and selling Nectresse as a natural sweetener constitutes unfair, unlawful, and fraudulent conduct; is likely to deceive members of the public; and is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, because, among other things, it misrepresents the characteristics of goods and services.

10.     Defendants' conduct of falsely marketing, advertising, labeling, and selling Nectresse as a sweetener primarily made from monk fruit constitutes unfair, unlawful, and fraudulent conduct; is likely to deceive members of the public; and is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, because, among other things, it misrepresents the characteristics of goods and services.

11.     As such, Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of Defendants' Nectresse (the "Class").  Plaintiff also seeks relief in this action individually and as a class action on behalf of a subclass of all purchasers in California of Defendants' Nectresse (the "California Class").

## JURISDICTION AND VENUE

12.     Both jurisdiction and venue are proper in this Court. Defendants

conduct, or have conducted, a substantial amount of business activity in California. Defendants have sufficient minimum contacts in California or otherwise intentionally avail themselves of the California market through, without limitation, their advertisement, promotion, marketing, sales and/or distribution of Nectresse in the State of California and the County of Ventura and other business activities, so as to render the exercise of jurisdiction over the Defendants by the California courts consistent with traditional notions of fair play and substantial justice.

13.     Venue is proper in this Court because Defendants regularly conduct business in Ventura County, because Plaintiff lives in Ventura County, and because the conduct alleged herein which gives rise to the claims asserted occurred within Ventura County.  Specifically, Plaintiff purchased the subject product at a store in Ventura County.

14.     Defendants have distributed, marketed, advertised, labeled, and sold Nectresse, which is the subject of the present complaint, in this District.  Thus, under 28 U.S.C. §§1391(c)(2) and (d), Defendants are deemed to reside in this District.  As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendants are deemed to reside in this District and under 28 U.S.C. §1391(b)(2), because Defendants conduct business in this District and a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

## PARTIES

15.     Plaintiff Lorraine Viggiano is a citizen of California and an individual consumer.  During the Class Period, Plaintiff Viggiano purchased Nectresse at a grocery store in Moorpark, California.

16.     Prior to purchasing the Product, Plaintiff Viggiano read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the Nectresse packaging.  For

each purchase, she understood that she was paying for a natural sweetener primarily made from the monk fruit plant and was deceived when she received a product that is made predominantly of synthetic erythritol and with only a miniscule amount of the monk fruit-derived Magou-V™, which is purified through a harsh chemical process.  During the Class Period, Plaintiff Viggiano also viewed and relied on Nectresse's website, which represented the Product as: (1) a natural sweetener and (2)  primarily made from the monk fruit plant.  But for Defendants' misrepresentations, Plaintiff Viggiano would not have purchased Nectresse, and/or would not have paid a premium for Nectresse over the price of other sugar-alternative sweeteners that are not promoted as natural.   Plaintiff Viggiano thus was damaged by Defendants' practice.

17.    Defendant McNeil Nutritionals LLC is a subsidiary of Johnson & Johnson, and sells a range of products including Lactaid, Viactiv and the branded sucralose sweetener Splenda. Defendant is a Delaware company headquartered in Fort Washington, Pennsylvania.  Defendant distributes, markets, advertises, and sells Nectresse in California and throughout the rest of the United States.

18.    Defendant Johnson & Johnson is an American multinational medical devices, pharmaceutical and consumer packaged goods manufacturer. Defendant is based in New Jersey.

19.    The use of the term "defendants" or "Defendants" in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the Defendants identified in this Complaint, but also all Defendants designated as DOES 1 through 10, inclusive, as though the term "Defendants" was followed in each and every instance throughout this Complaint with the phrase "and each of them jointly and severally, including all named Defendants and Defendants included herein and sued under the fictitious names of DOES 1 through 10, inclusive."

20.    Plaintiff is informed and believes, and thereon alleges, that

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

Defendants, at all times herein mentioned, were the partners, joint venturers, subsidiaries, successors in interest, managing agent, merged entities, agents, alter egos, part of a jointly owned, managed, and/or operated business enterprise, and/or employees of each other Defendant and in doing the acts, omissions, and things alleged herein were acting as such and within the scope of their authority as such agents and employees and with the permission and consent of all other Defendants.   Plaintiff is informed and believes, and thereon alleges, that Defendants have, and at all times herein mentioned had, a joint economic and business interest, goal and purpose in the products that are the subject of this lawsuit.

## ALLEGATIONS OF FACT

### A.   Defendants' False and Misleading Statements

21.   Nectresse® Natural No Calorie Sweetener is manufactured, distributed, marketed, advertised, and sold by McNeil to consumers as a tabletop sweetener for food and beverages.

22.   Throughout the Class Period, McNeil engaged in, and Plaintiff and members of the Classes were exposed to, a long-term advertising campaign in which McNeil utilized various forms of media including, but not limited to, print advertising on the Nectresse label and television commercials.   Since McNeil announced the launch of Nectresse® 100% Natural No Calorie Sweetener in 2012, McNeil consistently has made certain representations in its labeling, advertising, and marketing that are false and misleading.   To accomplish this, McNeil uses an integrated, nationwide messaging campaign to consistently convey the deceptive and misleading message that Nectresse is both (1) a natural sweetener and (2) primarily made from the monk fruit plant.   This message, *at a minimum*, is conveyed at the point of purchase on the Nectresse packaging and labeling.   Thus, all consumers are exposed to the same message whether viewed in television commercials or on the label.

**Second Amended Class Action Complaint
Case No. 14-cv-07250-DMG-MRW**

23.    During the Class Period, Plaintiff was introduced to Nectresse through its labeling and advertising.

24.    Specifically, McNeil states on Nectresse® 100% Natural No Calorie Sweetener packaging and labeling:

- Nectresse® 100% Natural No Calorie Sweetener
- 100% Natural
- It's 100% natural with nothing artificial
- Made From Monk Fruit

Additionally, the packing and labeling describe Monk Fruit and Erythitol as following:

- Monk Fruit is a round, green melon that grows on vines on remote mountaintops in central Asia. The fruit has been cultivated for centuries. An extract from the fruit has been recently re-discovered as an ingredient ideally suited for sweetening foods and beverages. Monk Fruit Extract is about 150X sweeter than sugar and contributes zero calories per serving of NECTRESSE™ Natural No Calorie Sweetener.

- Erythritol is an all-natural, sugar alcohol that is naturally fermented from sugars and is found in many vegetables and fruits.



**Second Amended Class Action Complaint
Case No. 14-cv-07250-DMG-MRW**

25.     Moreover, the packing prominently features natural imagery including a rendering of the product served in a monk fruit "bowl" surrounded by other natural fruits.   This rendering is placed above or adjacent to the representation that the product is "Made From Monk" fruit.  Absent from the front packaging is any mention that the product is blended with other sweeteners such as erythritol.

26.     These statements and pictures mislead the consumer into believing that the Product is (1) a natural sweetener and (2) primarily made from the monk fruit plant when, in fact, the Product is composed of predominantly synthetic erythritol and only a minute quantity of monk fruit-derived Magou-VTM, which is purified through a harsh chemical process and is not the same as natural crude monk fruit.

27.     Plaintiff and the Classes reasonably understood the Product's packaging to mean that the Product is a natural sweetener primarily made from the monk fruit plant and relied on such representations in making their purchases of the Product.

**B.     Nectresse is Not Primarily Made from the Monk Fruit Plant**

28.     Although McNeil leads consumers to believe that Nectresse is primarily made from the monk fruit plant, Nectresse actually is made predominantly with synthetic erythritol.   Plaintiff's calculations indicate that Nectresse is ***approximately 83%*** synthetic erythritol.  That Nectresse is almost entirely made with a synthetic ingredient is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.

29.     No reasonable consumer would know or have reason to know that Nectresse contains such a ***minute*** amount of the monk fruit-derived ingredient, Magou-VTM.  The quantity of Magou-VTM in Nectresse is within the exclusive knowledge of McNeil and is not known to ordinary consumers, including Plaintiff

-10-

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

and members of the Classes.  McNeil actively conceals this material fact from consumers, including Plaintiff and members of the Classes.  McNeil's representations that Nectresse is made from the monk fruit plant is, at best, an incomplete partial disclosure.

### C.   Nectresse is Not a *Natural* Sweetener

#### 1.   Magou-VTM is Not the Same as Natural Crude Monk Fruit

30.   Not only is there but a miniscule amount of monk fruit in Nectresse, but the highly processed, high purity monk fruit extract Magou-VTM in Nectresse is not what most consumers, including Plaintiff and members of the Classes, consider to be natural monk fruit.

31.   Magou-VTM is a highly purified form of monk fruit extract, which (as discussed below) is obtained through a harsh and unnatural chemical purification process.  So, while the highly processed Magou-VTM in Nectresse is derived from the monk fruit plant, it is not the same as the natural monk fruit. This distinction is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.

32.   In light of the above, no reasonable consumer would know, or have reason to know, that the monk fruit extract in Nectresse is highly processed Magou-VTM.  This information is within the exclusive knowledge of McNeil and is not known to ordinary consumers, including Plaintiff and members of the Classes.  McNeil actively conceals this material fact from consumers, including Plaintiff and members of the Classes.  McNeil's representation that Nectresse is made from the monk fruit plant is misleading.

/ / /

/ / /

/ / /

/ / /

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

2. **The Unnatural Processing and Synthetic Manufacturing of the Ingredients in Nectresse**

a. *Magou-VTM Is Created Through a Harsh Chemical Process that Includes Washing Crude Monk Fruit Extract with Ethanol and Styrene &Vinylbenzene resin*

33. McNeil sources its Magou-VTM from a third party that creates high purity Magou-VTM by first extracting the crude monk fruit from the monk fruit. (FDA Submission., *Determination of the GRAS Status Of the Use Of Luo Han Fruit Concentrate*.)  The monk fruit is mechanically crushed or shredded.  The macerated fruit is then decocted with deionized water, cooled, filtered through an ultrafiltration membrane and then passed through a pressurized column filled with the resin divinylbeneze copolymer.  After treatment with the resin, the adhered material is essentially washed with an aqueous ethanol solution.  This process frees virtually all of the absorbed material from the resin.  The ethanol and bound water is then condensed and recycled away.

34. The liquid is then decolorized by contacting the mother liquid with a styrene divinylbenzene resin.  The mother liquid is then concentrated to approximately 40% soluble solids and spray-dried at 120ºC.  Any remaining water and thanol is removed at this time.

35. At the end of each run, the resin is regenerated by flushing with a solution of calcium hydroxide, followed by filtered water.  Next, a solution of hydrochloric acid is introduced to restore the neutral pH of the resin.  Finally the column is flushed with filtered water.

36. That Magou-VTM is obtained through a harsh chemical process is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.  Consumers, including Plaintiff and members of the Classes, do not consider a product with an ingredient that is harshly chemically processed to be natural.

37.    For instance, the U.S. Department of Agriculture ("USDA") takes into account the level of processing in its policy on natural claims on food labeling.  The USDA defines a product as "natural" when "(1) The product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or synthetic ingredient; and (2) the product and its ingredients are not more than ***minimally processed***."  *See* U.S. Department of Agriculture, Food Safety and Inspection Serv., "Natural Claims" in FOOD STANDARDS AND LABELING POLICY BOOK (revised August 2005).   According to the USDA, minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, *e.g*., smoking, roasting, freezing, drying, and fermenting. *Id*.

38.    No reasonable consumer would know, or have reason to know, that Magou-VTM is achieved through a harsh chemical process.  This information is within the exclusive knowledge of McNeil and its suppliers and is not known to ordinary consumers, including Plaintiff and members of the Classes.   McNeil actively conceals this material fact from consumers, including Plaintiff and members of the Classes.  McNeil's representation that Nectresse is made from the monk fruit plant and that its product can be produced through a simple 5 step process ("pick, crush, infuse, dry, blend (with other natural sweeteners)") is misleading.

### b.  The Erythritol Used in Nectresse is Also Synthetic

39.    McNeil represents to consumers on, *inter alia,* its website that erythritol is "an all-natural, sugar alcohol that is naturally fermented from sugars and is found in many vegetables and fruits."  What McNeil fails to disclose is that the erythritol used in Nectresse is synthetic.

40.    Synthetic erythritol is manufactured by first chemically extracting starch from corn and then converting the starch to glucose through the

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

biochemical process of enzymatic hydrolysis.  The glucose is then fermented utilizing *moniliella pollinis*, a yeast.  The fermentation broth is sterilized, filtered, and purified to produce erythritol crystals.  This process is not the same process that is used in nature to produce the erythritol that is "found in many vegetables and fruit."

41.    That the main ingredient in Nectresse is synthetic is material to consumers, including Plaintiff and members of the Classes, who are seeking to consume natural products.  Consumers, including Plaintiff and members of the Classes, do not consider a product with a synthetic ingredient to be natural.

42.    For instance, while the U.S. Food and Drug Administration ("FDA") has not developed a definition for use of the term "natural," the agency does not object to the use of the term if the food does not contain added color, artificial flavors or *synthetic substances*.  *See* Food Labeling:  Nutrient Content Claims, General Principles Petitions, Definition of Terms, 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991).[3]  Similarly, as stated above, the U.S. Department of Agriculture defines a product as "natural" when: "(1) The product does not contain any artificial flavor or flavoring, coloring ingredient, or chemical preservative (as defined in 21 CFR 101.22), or any other artificial or *synthetic ingredient*; and (2) the product and its ingredients are not more than minimally processed."  *See* U.S. Department of Agriculture, Food Safety and Inspection Serv., "Natural Claims" in FOOD STANDARDS AND LABELING POLICY BOOK (revised August 2005).

43.    The term "synthetic" is defined as "of, relating to, or produced by chemical or biochemical synthesis; especially: produced artificially."  *See* http://www.merriam-webster.com/dictionary/synthetic (Last visited May 14,

---

[3] *See also* http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm (last visited May 14, 2014).

-14-

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

2014).  Erythritol is a synthetic substance because it is made by man (not nature) through a biochemical process that is not the same as it is made in nature.  Thus, erythritol cannot be considered a natural ingredient.  Nectresse is *estimated to be more than 80% erythritol*, and thus, it also cannot be considered a natural product.

44.   No reasonable consumer would know, or have reason to know, that the erythritol in Nectresse is synthetic.  This information is within the exclusive knowledge of McNeil and is not known to ordinary consumers, including Plaintiff and members of the Classes.  McNeil actively conceals this material fact from consumers, including Plaintiff and members of the Classes. McNeil's representation that erythritol "is a natural sweetener, produced by natural processes" and that it is "found in many vegetables and fruits " is misleading.

**D.    Consumers Desire Natural Foods**

45.   Defendants also realize that consumers are increasingly aware of the relationship between health and diet[4] and, thus, understand the importance and value of descriptors and labels that convey to consumers that a product is natural when considering whether to buy foods.

46.   American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet.  Product package labels are vehicles that convey food quality and nutrition information to consumers that they can and do use to make purchasing decisions.

47.   Surveys have shown that "natural" is one of the top descriptors consumers consider.  *See, e.g.*, David L. Ter Molen and David S. Becker, *An "All Natural" Dilemma: As the Market for "All Natural" Foods Continues to Grow, So Do the Risks for the Unwary* (Nov.   27,   2012)   at   2,

---

[4] *See http://www.multivu.com/mnr/57256-nectresse-natural-no-calorie-sweetener-real-fruit-lisa-ling (last visited May 12, 2014).*

-15-

1  http://www.freeborn.com/assets/white_papers/02.12_white-paper-natural-food-
2  update.pdf  (last visited May 12, 2013).  Consumers desire natural ingredients in
3  food products for a myriad of reasons, including wanting to live a healthier
4  lifestyle, perceived benefits in avoiding disease, and other chronic conditions, as
5  well as to increase weight loss and avoid chemical additives in their food.  *See,*
6  *e.g.,* Food Marketing Institute, *Natural and Organic Foods* (September 2008) at 1,
7  http://www.fmi.org/docs/media-backgrounder/natural_organic_
8  foods.pdf?sfvrsn=2 (last visited May 13, 2014)).  As a result, consumers are
9  willing to pay a higher price for higher quality foods, such as those that are
10  natural.  *See, e.g.*, Context Marketing, *Beyond Organic: How Evolving Consumer*
11  *Concerns      Influence      Food      Purchase*      (Oct.      2009)      at      6,
12  http://www.contextmarketing.com/insights.html (last visited May 14,2014).

13       48.     Although this segment of the health food market was once a niche
14  market, natural foods are increasingly becoming part of the mainstream food
15  landscape.  According to Natural Foods Merchandiser, a leading information
16  provider for the natural, organic, and healthy products industry, the natural food
17  industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in
18  2009.  *See Natural and Organic Products Industry Sales Hit $81 Billion, Natural*
19  *Foods     Merchandiser*     (June     1,     2011),     http://www.prnewswire.com/news-
20  releases/natural-and-organic-products-industry-sales-hit-81-billion-
21  122958763.html (last visited May 14, 2014).  The market for all natural and
22  organic foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher
23  than   sales   in   2005.   http://www.marketwire.com/press-release/natural-and-
24  organic-food-and-beverage-market-to-double-by-2015-1525854.htm  (last  visited
25  May 14, 2014).  Consumer demand for all natural and organic foods is expected to
26  grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in
27  2015.  *Id*.

28       49.     In order to capture and tap into this growing market and the hunger

-16-

of consumers for the perceived healthier, chemical-free benefits of natural foods, McNeil labels Nectresse as a natural sweetener primarily made from the monk fruit plant.

50.     A reasonable consumer understands a natural product to be one that does not contain man-made, synthetic ingredients, is not subject to harsh chemical processes, and is only minimally processed.

51.     Consumers lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "natural," especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer.  Thus, reasonable consumers must, and do, rely on food companies such as McNeil to honestly report the nature of a food's ingredients, and food companies such as McNeil intend and know that consumers rely upon food labeling statements in making their purchasing decisions.  Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal law.

52.     Defendants unscrupulously capitalize on consumers' heightened demand for natural products by deceptively labeling, advertising, and marketing Nectresse.

## DAMAGES TO PLAINTIFF AND THE CLASSES

53.     Plaintiff purchased the Product based on Defendants' labeling, advertising, and marketing that the Product is a natural sweetener primarily made from the monk fruit plant.

54.     Defendants manufactured, distributed, and sold products that are misbranded.  Misbranded products cannot be legally manufactured, distributed, sold, or held, and have no economic value and are legally worthless as a matter of law.

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

55.   Moreover, Plaintiff and the members of the Classes would not have purchased and/or paid a premium to purchase the Product over comparable products that do not purport to be natural.

56.   As set forth in the chart below, the Product costs more than comparable products that do not purport to be natural.

| Product | Price | Price per packet | Premium paid per packet versus … |
|---------|-------|------------------|----------------------------------|
| Nectresse – 40 count box | $3.99 | $0.0975 | |
| Splenda – 50 count box | $2.99 | $0.0598 | $0.0377 |
| Sweet 'N Low – 100 count box | $2.49 | $0.0249 | $0.0726 |

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS

57.   Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the claims sued upon herein until immediately prior to commencing this civil action.

58.   Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

59.   Because of the self-concealing nature of Defendants' actions and their affirmative acts of concealment, Plaintiff and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

60.   Defendants continue to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendants' unlawful conduct.  Therefore, Plaintiff and the Classes submit that each instance that Defendants engaged in the conduct complained of herein and each instance

that a member of any Class purchased Nectresse constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

61.   Defendants are estopped from relying on any statute of limitations defense because of their unfair or deceptive conduct.

62.   Defendants' conduct was and is, by its nature, self-concealing.  Still, Defendants, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding their illegal conduct, and actively have foreclosed Plaintiff and the Classes from learning of their illegal, unfair, and/or deceptive acts.  These affirmative acts included concealing the amount of Magou-VTM in Nectresse, that Magou-VTM is not the same as natural crude monk fruit extract, and that the erythritol McNeil uses in Nectresse is synthetic.

63.   By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## CLASS ACTION ALLEGATIONS

64.   Plaintiff brings this action individually and on behalf of all other persons similarly situated.   The Classes which Plaintiff seeks to represent comprise:

a.  All persons in California who purchased Nectresse from introduction in 2012 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes. Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant (California Class).  Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial

-19-

staff, and any juror assigned to this action.

b. All persons in the United States outside of California who purchased Nectresse from its introduction in 2012 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes. Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant (National Class). Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

c. All persons who reside in states in the United States outside of California with similar consumer protection laws, breach of express warranty laws and breach of implied warranty law, who purchased Nectresse from its introduction in 2012 until the date notice is disseminated for personal or household use, and not for resale or distribution purposes (Consumer Protection Class). Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

65. The Classes are sufficiently numerous, as each includes thousands of

persons who have purchased the Product.  Thus, joinder of such persons in a single action or bringing all members of the Classes before the Court is impracticable for purposes of Rule 23(a)(1).  The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court.  The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

66.    There are questions of law and fact common to each Class for purposes of Rule 23(a)(2), including whether Defendants' labels and packaging include uniform misrepresentations that misled Plaintiff and the other members of the Classes to believe the Product is natural and made primarily from the monk fruit plant.  The members of each Class were and are similarly affected by having purchased Nectresse for its intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendants as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Classes.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

67.    Plaintiff asserts claims that are typical of the claims of each respective Class for purposes of Rule 23(a)(3).  Plaintiff and all members of each respective Class have been subjected to the same wrongful conduct because they have purchased that Product, which is not natural as represented.  Plaintiff paid a premium for the Product, on the belief it was natural, over similar alternatives that did not make such representations.  Plaintiff and the members of each Class have thus all overpaid for the Product.

68.    Plaintiff will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Rule 23(a)(4). Plaintiff has no interests antagonistic to those of other members of each respective Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent her.  Plaintiff

-21-

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

1  anticipates no difficulty in the management of this litigation as a class action.

2      69.   Class certification is appropriate under Rule 23(b)(2) because

3  Defendants have acted on grounds that apply generally to each Class, so that final

4  injunctive relief or corresponding declaratory relief is appropriate respecting each

5  Class as a whole.   Defendants utilize an integrated, nationwide messaging

6  campaign that includes uniform misrepresentations that misled Plaintiff and the

7  other members of each Class.

8      70.   Class certification is appropriate under Rule 23(b)(3) because

9  common questions of law and fact substantially predominate over any questions

10 that may affect only individual members of each Class.   Among these common

11 questions of law and fact are:

12      a.   whether Defendants misrepresented or omitted material facts

13 in connection with the promotion, marketing, advertising, packaging,

14 labeling, and sale of Nectresse;

15      b.   whether Defendants' labeling of Nectresse is likely to deceive

16 the members of each Class;

17      c.   whether Defendants' conduct is unethical, oppressive,

18 unscrupulous, and/or substantially injurious to consumers;

19      d.   whether Defendants represented that Nectresse has

20 characteristics, benefits, uses, or qualities that it does not have;

21      e.   whether Defendants' acts and practices in connection with the

22 promotion, marketing, advertising, packaging, labeling, distribution, and

23 sale of Nectresse violated the laws alleged herein;

24      f.   whether Plaintiff and members of the Classes are entitled to

25 injunctive and other equitable relief; and

26      g.   whether Defendants were unjustly enriched by their conduct.

27      71.   Defendants engaged in a common course of conduct giving rise to

28 the legal rights sought to be enforced by the members of each respective Class.

-22-

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

72.    The injuries sustained by Plaintiff and the members of each Class flow, in each instance, from a common nucleus of operative facts – Defendants' misconduct.

73.    Plaintiff and the members of each Class have been damaged by Defendants' misconduct.  The members of each Class have paid for a product that would not have been purchased in the absence of Defendants' deceptive scheme, or, alternatively, would have been purchased at a lesser price.

74.    Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Members of each Class have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.  Because of the nature of the individual claims of the members of each Class, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore the appropriate, superior method of proceeding and essential to the interests of justice insofar as the resolution of claims of the members of each Class is concerned.  Absent a representative class action, members of each Class would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of its ill-gotten gains.  Even if separate actions could be brought by individual members of each Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings, which might be dispositive of the interests of the other members of each Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

## FIRST CAUSE OF ACTION

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF

## BUSINESS & PROFESSIONS CODE § 17200, *et seq*.

**(By Plaintiff and California Class against all Defendants and Does 1-10)**

75.     Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

76.     This cause of action is brought pursuant to *Business and Professions Code* § 17200, *et seq*.

77.     In the advertising of Nectresse, Defendant McNeil makes false and misleading statements.  Specifically, as set forth above, McNeil contends that Nectresse is (1) a natural sweetener and (2) primarily made from the monk fruit plant.

78.     In fact, the Product is composed of predominantly synthetic erythritol and only a minute quantity of monk fruit-derived Magou-VTM, which is purified through a harsh chemical process and is not the same as natural crude monk fruit.

79.     Defendant McNeil is aware that the claims that it makes about the Nectresse are false, misleading and unsubstantiated.

80.     As alleged in the preceding paragraphs, the misrepresentations by Defendant McNeil of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17200.

81.     In addition, Defendant McNeil's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitute unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

82.     There were reasonably available alternatives to further Defendant McNeil's legitimate business interests, other than the conduct described herein.

83.     All of the conduct alleged herein occurs and continues to occur in Defendant McNeil's business.  Defendant McNeil's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

84.     Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of the Nectresse.   Likewise, Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

## <u>SECOND CAUSE OF ACTION</u>

**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq.***

**(By Plaintiff and California Class against all Defendants and Does 1-10)**

85.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

86.     This cause of action is brought pursuant to *Business and Professions Code* § 17500, *et seq.*

87.     In its advertising of Nectresse, Defendants make false and misleading statements. Specifically, as set forth above, McNeil contends that Nectresse is (1) a natural sweetener and (2) primarily made from the monk fruit plant.

/ / /

88.    In fact, the Product is composed of predominantly synthetic erythritol and only a minute quantity of monk fruit-derived Magou-VTM, which is purified through a harsh chemical process and is not the same as natural crude monk fruit.

89.    Defendants are aware that the claims that they make about Nectresse are false, misleading and unsubstantiated.

90.    As alleged in the preceding paragraphs, the misrepresentations by Defendants of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17500.

91.    In addition, Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of *Business & Professions Code* § 17500.

92.    Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of Nectresse.  Likewise, Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

/ / /

/ / /

/ / /

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq*.**

**(By Plaintiff and California Class against all Defendants and Does 1-10)**

93.     Plaintiff repeats and realleges all the allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

94.     This cause of action is brought pursuant to *Civil Code* § 1750, *et seq*., the Consumers Legal Remedies Act.

95.     The Consumer Class consists of thousands of persons, the joinder of whom is impracticable.

96.     There are questions of law and fact common to the classes, which questions are substantially similar and predominate over questions affecting the individual members, including but not limited to:

(a)     Whether Defendants represented that Nectresse has characteristics, benefits, uses or quantities which it does not have;

(b)     Whether the existence, extent and significance of the major misrepresentations regarding the purported benefits, characteristics and efficacy of Nectresse violate the Act; and

(c)     Whether Defendants knew of the existence of these misrepresentations.

97.     The policies, acts, and practices heretofore described were intended to result in the sale of Nectresse to the consuming public and violated and continue to violate § 1770(a)(5) of the Act by representing that Nectresse has characteristics, benefits, uses or quantities which it does not have.

98.     Defendants fraudulently deceived Plaintiff and the Classes by representing that Nectresse has certain characteristics, benefits, uses and qualities which it does not have.  In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Classes, specifically and not limited to that Nectresse is natural.  Said misrepresentations and concealment

were done with the intention of deceiving Plaintiff and the Classes and depriving them of their legal rights and money.

99.   Defendants knew that Nectresse was, and is, not natural as represented in Defendants' advertisements and on Defendants' packaging.

100.   Defendants' actions as described hereinabove were done with conscious disregard of Plaintiff's rights and Defendants were wanton and malicious in their concealment of the same.

101.   Pursuant to § 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendants including, but not limited to, an order enjoining Defendants from distributing such false advertising and misrepresentations.   Plaintiff shall be irreparably harmed if such an order is not granted.

102.   Pursuant  to Civil Code §1782, Plaintiff gave Defendants notice by letter dated May 29, 2014, by certified mail, of the particular violations of Civil Code § 1770.   The Notice requested that Defendants rectify the problems associated with the actions alleged in this Complaint, and give notice to all affected consumers of its intent to so act.

103.   Defendants have failed to provide appropriate relief for their violations of the CLRA within 30 days of their receipt of the CLRA Demand Notice. Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiffs are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (By Plaintiff, California Class and National Class

### Against all Defendants and Does 1-10)

104.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

-28-

105.   Plaintiff brings this claim individually, as well as on behalf of members of the nationwide Class and California Class pursuant California law. Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, California law applies to the claims of the Class.

106.   In the alternative, Plaintiff brings this claim individually as well as on behalf of the California Class.

107.  At all times relevant hereto, Defendants deceptively labeled, marketed, advertised, and sold Nectresse to Plaintiff and the Classes.

108.   Plaintiff and members of the Classes conferred upon Defendants non-gratuitous payments for Nectresse that they would not have due to Defendants' deceptive labeling, advertising, and marketing.  Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.

109.  Defendants have been unjustly enriched in retaining the revenues derived from purchases of Nectresse by Plaintiff and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendants misrepresented that Nectresse is: (1) a natural sweetener and

-29-

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

1  (2)  primarily made from the monk fruit plant, when in fact it is not, which caused

2  injuries to Plaintiff and members of the Classes because they paid a price

3  premium due to the mislabeling of Nectresse.

4      110.   Retaining the non-gratuitous benefits conferred upon Defendants by

5  Plaintiff and members of the Classes under these circumstances made Defendants'

6  retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants

7  must pay restitution to Plaintiff and members of the Classes for their unjust

8  enrichment, as ordered by the Court.

9  **FIFTH CAUSE OF ACTION**

10  **BREACH OF EXPRESS WARRANTY**

11  **(By Plaintiff, on behalf of herself, the California Class and**

12  **Consumer Protection Class Against all Defendants and Does 1-10)**

13      111.   Plaintiff repeats and realleges the allegations set forth in the

14  preceding paragraphs, and incorporates the same as if set forth herein at length.

15      112.   Plaintiff brings this Count individually under the laws of the state

16  where she purchased Nectresse and on behalf of the California Class and

17  Consumer Protection Class (in states having similar laws regarding express

18  warranties).

19      113.   Defendants' representations, as described herein, are affirmations by

20  Defendants that Nectresse is: (1) a natural sweetener, and (2) primarily made of

21  monk fruit.  Defendants' representations regarding Nectresse are made to Plaintiff

22  and the other members of the Classes at the point of purchase and are part of the

23  description of the goods.   Those promises constituted express warranties and

24  became part of the basis of the bargain, between Defendants on the one hand, and

25  Plaintiff and the Classes on the other.

26      114.   In addition, or in the alternative, Defendants made each of their

27  above-described representations to induce Plaintiff and the Classes to rely on such

28  representations, and they each did so rely on Defendants' representations as a

-30-

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

material factor in their decisions to purchase Nectresse.   Plaintiff and other members of the Classes would not have purchased Nectresse but for these representations and warranties.

115.   Nectresse did not, in fact, meet the representations Defendants made about Nectresse, as described herein.

116.   At all times relevant to this action, Defendants falsely represented that Nectresse was (1) a natural sweetener and (2) primarily made from the monk fruit plant, when in fact it is not natural and is not primarily made from the monk fruit plant.

117.   At all times relevant to this action, Defendants made false representations in breach of the express warranties and in violation of state express warranty laws, including:

a.     Alaska St. §45.02.313;

b.     Ariz. Rev. Stat. Ann. §47-2313;

c.     Ark. Code Ann. §4-2-313;

d.     Cal. Com. Code §2313;

e.     Colo. Rev. Stat. §4-2-313;

f.     Conn. Gen. Stat. Ann. §42a-2-313;

g.     D.C. Code §28:2-313;

h.     Fla. Stat. §672.313;

i.     Haw. Rev. Stat. §490:2-313;

j.     810 Ill. Comp. Stat. 5/2-313;

k.     Ind. Code §26-1-2-313;

l.     Kan. Stat. Ann. §84-2-313;

m.     La. Civ. Code. Ann. art. 2520;

n.     Maine Rev. Stat. Ann. 11 §2-313;

o.     Mass. Gen. Laws Ann. 106 §2-313;

p.     Minn. Stat. Ann. §336.2-313;

-31-

q.     Miss. Code Ann. §75-2-313;

r.     Mo. Rev. Stat. §400.2-313;

s.     Mont. Code Ann. §30-2-313;

t.     Neb. Rev. Stat. §2-313;

u.     Nev. Rev. Stat. §104.2313;

v.     N.H. Rev. Stat. Ann. §382-A:2-313;

w.     N.J. Stat. Ann. §12A:2-313;

x.     N.M. Stat. Ann. §55-2-313;

y.     N.Y. U.C.C. Law §2-313;

z.     N.C. Gen. Stat. Ann. §25-2-313;

aa.    Okla. Stat. Ann. tit. 12A, §2-313;

bb.    Or. Rev. Stat. §72.3130;

cc.    Pa. Stat. Ann. tit. 13, §2313;

dd.    R.I. Gen. Laws §6A-2-313;

ee.    S.C. Code Ann. §36-2-313;

ff.    S.D. Codified Laws. §57A-2-313;

gg.    Tenn. Code Ann. §47-2-313;

hh.    Tex. Bus. & Com. Code Ann. §2.313;

ii.    Utah Code Ann. §70A-2-313;

jj.    Vt. Stat. Ann. tit. 9A§2-313;

kk.    Wash. Rev. Code §62A.2-313;

ll.    W. Va. Code §46-2-313;

mm.    Wyo. Stat. Ann. §34.1-2-313;

118.   The above statutes do not require privity of contract in order to recover for breach of express warranty.

119.   As a proximate result of this breach of warranty by Defendants, Plaintiff and other members of the Classes have been damaged in an amount to be determined at trial because: (a) they paid a price premium due to the deceptive

-32-

1    labeling of Nectresse; and (b) Nectresse did not have the composition, attributes,

2    characteristics, nutritional value, health qualities, or value promised.

3        120.   Wherefore, Plaintiff and the Classes demand judgment against

4    Defendants for compensatory damages, plus interest, costs, and such additional

5    relief as the Court may deem appropriate or to which Plaintiff and the Classes may

6    be entitled.

7                           **SIXTH CAUSE OF ACTION**

8                      **BREACH OF IMPLIED WARRANTY**

9    **(By Plaintiff, on Behalf of Herself, the California Class, the California Class**

10       **and Consumer Protection Class Against Defendants and Does 1-10)**

11       121.   Plaintiff repeats and realleges the allegations set forth in the

12   preceding paragraphs, and incorporates the same as if set forth herein at length.

13       122.   Plaintiff brings this Count individually under the laws of the state

14   where she purchased Nectresse and on behalf of the California Class and

15   Consumer Protection Class (in states having similar laws regarding implied

16   warranties).

17       123.   The Uniform Commercial Code §2-314 provides that unless excluded

18   or modified, a warranty that the goods shall be merchantable is implied in a

19   contract for their sale if the seller is a merchant with respect to goods of that kind.

20   This implied warranty of merchantability acts as a guarantee by the seller that his

21   goods are fit for the ordinary purposes for which they are to be used.

22       124.   The Uniform Commercial Code §2-314 provides that "[g]oods to be

23   merchantable must be at least such as….Conform to the promises or affirmations

24   of fact made on the container or label if any." Cal.Com.Code § 2314(2)(f).

25       125.   Defendants developed, manufactured, advertised, marketed, sold,

26   and/or distributed the Product and represented that the Product was "100%

27   Natural," was a "Natural No Calorie Sweetener," that "Nectresse® sweetener

28   comes from nature," that the product is "Made From Monk Fruit" and that the

-33-

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

product "derives its natural sweetness from monk fruit." Defendants failed to disclose that the Product is not natural and is not primarily made from the monk fruit plant, as promised.

126. At all times, the following states listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability:

a.    Ala. Code §7-2-314;

b.    Alaska Stat. §45.02.314;

c.    Ariz. Rev. Stat. Ann. §47-2314;

d.    Ark. Code Ann. §4-2-314;

e.    Cal. Com. Code §2314;

f.    Colo. Rev. Stat. §4-2-314;

g.    Conn. Gen. Stat. Ann. §42a-2-314;

h.    Del. Code Ann. tit. 6 §2-314;

i.    D.C. Code §28:2-314;

j.    Fla. Stat. §672.314;

k.    Ga. Code Ann. §11-2-314;

l.    Haw. Rev. Stat. §490:2-314;

m.    Idaho Code §28-2-314;

n.    810 Ill. Comp. Stat. Ann. 5/2-314;

o.    Ind. Code Ann. §26-1-2-314;

p.    Iowa Code Ann. §554.2314;

q.    Kan. Stat. Ann. §84-2-314;

r.    Ky. Rev. Stat. Ann. §355.2-314;

s.    La. Civ. Code Ann. art. §2520;

t.    Me. Rev. Stat. Ann. 11 §2-314;

u.    Md. Code Ann. Com. Law §2-314;

v.    Mass. Gen. Laws Ch. 106 §2-314;

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

| | w. | Mich. Comp. Laws Ann. §440.2314; |
|---|---|---|
| | x. | Minn. Stat. Ann. §336.2-314; |
| | y. | Miss. Code Ann. §75-2-314; |
| | z. | Mo. Rev. Stat. §400.2-314; |
| | aa. | Mont. Code Ann. §30-2-314; |
| | bb. | Nev. Rev. Stat. §104.2314; |
| | cc. | N.H. Rev. Stat. Ann. §382-A:2-314; |
| | dd. | N.J. Stat. Ann. §12A:2-314; |
| | ee. | N.M. Stat. Ann. §55-2-314; |
| | ff. | N.Y. U.C.C. Law §2-314; |
| | gg. | N.C. Gen. Stat. Ann. §25-2-314; |
| | hh. | N.D. Cent. Code §41-02-314; |
| | ii. | Ohio Rev. Code Ann. §1302.27; |
| | jj. | Okla. Stat. Ann. tit. 12A §2-314; |
| | kk. | Or. Rev. Stat. §72.3140; |
| | ll. | Pa. Stat. Ann. tit. 13 §2314; |
| | mm. | R.I. Gen. Laws §6A-2-314; |
| | nn. | S.C. Code Ann. §36-2-314; |
| | oo. | S.D. Codified Laws §57A-2-314; |
| | pp. | Tenn. Code Ann. §47-2-314; |
| | qq. | Tex. Bus. & Com. Code Ann. §2-314; |
| | rr. | Utah Code Ann. §70A-2-314; |
| | ss. | Va. Code Ann. §8.2-314; |
| | tt. | Vt. Stat. Ann. tit. 9A §2-314; |
| | uu. | W. Va. Code §46-2-314; |
| | vv. | Wash. Rev. Code §62A 2-314; |
| | ww. | Wis. Stat. Ann. §402.314; and |
| | xx. | Wyo. Stat. Ann. §34.1-2-314. |

-35-

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

127.   As developer, manufacturer, producer, advertiser, marketer, seller and/or distributor of sweetening products, Defendants are "merchants" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

128.   Further, Defendants are merchants with respect to the Product. Defendants developed, manufactured, produced, advertised, marketed, sold, and/or distributed the Product and represented to Plaintiff and the Classes that they developed the Product as a natural sweetener primarily made from the monk fruit plant as described herein.  Further, Defendants, by selling the Product to Plaintiff and the Classes, have held themselves out as retailers of the Product that could be used as a natural sweetener primarily made from the monk fruit plant and, in fact, have derived a substantial amount of revenues from the sale of the Product.

129.   The Product can be classified as "goods," as defined in the various states' commercial codes governing the implied warranty of merchantability.

130.   As a merchant of the Product, Defendants knew that purchasers relied upon them to develop, manufacture, produce, sell, and distribute a product that could be used as a natural sweetener primarily made from the monk fruit plant, as promised.

131.   Defendants developed, manufactured, produced, sold, and distributed the Product to consumers such as Plaintiff and the Classes.  They knew that the Product would be used as a natural sweetener primarily made from the monk fruit plant, as promised.

132.   Defendants specifically represented in their labeling of the Product that it is a natural sweetener primarily made from the monk fruit plant, as described herein.

133.   At the time that Defendants developed, manufactured, sold, and/or distributed the Product, Defendants knew the purpose for which the Product was

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

intended and impliedly warranted that the Product was of merchantable quality and was fit for its ordinary purpose – a natural sweetener primarily made from the monk fruit plant.

134.   Defendants breached their implied warranties in connection with the sale of the Product to Plaintiff and members of the Classes.  The Product was not fit for its ordinary purposes and intended use as a natural sweetener primarily made of monk fruit, because the Product is not natural and is predominantly made of erythritol.

135.   Defendants had actual knowledge that the Product was not natural and was not primarily made from the monk fruit plant as promised and thus was not fit for its ordinary purpose and Plaintiff therefore was not required to notify Defendants of their breach.  If notice is required, Plaintiff and the Classes adequately have provided Defendants of such notice through the filing of this lawsuit.

136.   As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and other members of the Classes have been injured.  Plaintiff and the other members of the Classes would not have purchased the Product but for Defendants' representations and warranties.  Defendants misrepresented the character of the Product, which caused injuries to Plaintiff and the other members of the Classes because either they paid a price premium due to the deceptive labeling or they purchased products that were not of a character and fitness as promised and therefore had no value to Plaintiff and the other members of the Classes.

/ / /

/ / /

/ / /

/ / /

/ / /

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

## SEVENTH CAUSE OF ACTION

### VIOLATIONS OF CONSUMER FRAUD LAWS

**(By Plaintiff, on Behalf of Herself, the California Class, and Consumer Protection Class against all Defendants and Does 1-100)**

137.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

138.   Plaintiff brings this Count individually under the laws of the state where she purchased Nectresse and on behalf of all other persons who purchased Nectresse in states having similar laws regarding consumer fraud and deceptive trade practices.

139.   Plaintiff and each of the other members of the Classes are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the state in which they purchased the Product.

140.   The consumer protection laws of the State in which Plaintiff and the other members of the Classes purchased the Product declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

141.   Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.    Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

    b.    Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471 *et seq.*;

    c.    Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*;

    d.    California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

-38-

e.   Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.*;

f.   Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et seq.*;

g.   Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et seq.*;

h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901 *et seq.*;

i.   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201 *et seq.*;

j.   Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et seq.*;

k.   California Unfair and Deceptive Practices Act, California Revised Statues §480-1 *et seq.*, and California Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1 *et seq.*;

l.   Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

m.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*;

n.   Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et seq.*;

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401 *et seq.*;

q.   Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211 *et seq.*,

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

r.    Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.    Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.    Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.,* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.    Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.    Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.   Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101 *et seq.*;

x.    Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

y.    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

z.    New Hampshire Consumer Protection Act,  N.H. Rev. Stat. §358-A:1 *et seq.*;

aa.   New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

bb.   New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

cc.   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

dd.   North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

-40-

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

ee.   Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.   Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

gg.   Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh.   Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1 *et seq.*;

ii.   South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq.*;

jj.   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1 *et seq.*;

kk.   Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et seq.*;

ll.   Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

mm.   Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et seq.*;

nn.   West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101 *et seq.*; and

oo.   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

142.   The Product constitutes a product to which these consumer protection laws apply.

143.   In the conduct of trade or commerce regarding its production, marketing, and sale of the Product, Defendants engaged in one or more unfair or deceptive acts or practices including, but not limited to, uniformly representing to Plaintiff and each member of the Classes by means of their packaging and labeling of the Product that it is a natural sweetener primarily made from the monk fruit plant, as described herein.

**Second Amended Class Action Complaint
Case No. 14-cv-07250-DMG-MRW**

144.   Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

145.   Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

146.   Defendants used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

147.   Plaintiff and the other members of the Classes did so rely.

148.   Plaintiff and the other members of the Classes purchased the Product produced by Defendants which misrepresented the characteristics and nature of the Product.

149.   Plaintiff and the other members of the Classes would not have purchased the Product but for Defendants' deceptive and unlawful acts.

150.   As a result of Defendants' conduct, Plaintiff and the other members of the Classes sustained damages in amounts to be proven at trial.

151.   Defendants' conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows (cause of action number three is excluded from the below to the extent the remedy includes monetary damages):

A.   That the Court certify the nationwide Class and the California Class under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and her attorneys as Class Counsel to represent the members of the Classes;

B.   That the Court declare that Defendants' conduct violates the statutes referenced herein;

**Second Amended Class Action Complaint**
**Case No. 14-cv-07250-DMG-MRW**

C.     That the Court preliminarily and permanently enjoin Defendants from conducting their business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

D.     That the Court order Defendants to conduct a corrective advertising and information campaign advising consumers that the Product does not have the characteristics, uses, benefits, and quality Defendants have claimed;

E.     That the Court order Defendants to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint (excluded from this request is cause of action number three to the extent the remedy includes monetary damages);

F.     That the Court order Defendants to notify each and every individual and/or business who purchased the Product of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendants (excluded from this request is cause of action number three);

G.     That the Court order Defendants to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon(excluded from this request is cause of action number three);

H.     That the Court order Defendants to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendants as a result of its acts or practices as alleged in this Complaint (excluded from this request is cause of action number three);

I.     That the Court award damages to Plaintiff and the Classes (excluded from this request is cause of action number three);

J.       The common fund doctrine, and/or any other appropriate legal theory (excluded from this request is cause of action number three); and

K.       that the Court grant such other and further relief as may be just and proper (excluded from this request is cause of action number three to the extent the remedy includes monetary damages).

DATED:   October 23, 2014          **MARLIN & SALTZMAN, LLP**


By**:**  /S/   Kiley Lynn Grombacher
        Marcus J. Bradley, Esq.
        Kiley Lynn Grombacher, Esq.
        Attorneys for Plaintiff


## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

DATED:   October 23, 2014          **MARLIN & SALTZMAN, LLP**


By**:**  /S/   Kiley Lynn Grombacher
        Marcus J. Bradley, Esq.
        Kiley Lynn Grombacher, Esq.
        Attorneys for Plaintiff

**Second Amended Class Action Complaint
Case No. 14-cv-07250-DMG-MRW**