UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-07250 DMG (MRWx)** | Date | June 12, 2015 |
|---|---|---|---|

| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 1 of 10 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS' MOTION TO DISMISS [23]**

    Before this Court is Defendants Johnson & Johnson and McNeil Nutritionals LLC's motion to dismiss the Second Amended Complaint ("SAC") and to strike multi-state class allegations. [Doc. # 23.] In the SAC, Plaintiff Lorraine Viggiano asserts the following causes of action: (1) false and misleading advertising in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) false and misleading advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (4) unjust enrichment; (5) breach of express warranty; (6) breach of implied warranty; and (7) violation of consumer fraud laws. [Doc. # 22.]

## I.
## FACTUAL BACKGROUND[1]

    Since as early as 2012, McNeil Nutritionals LLC, a subsidiary of Johnson & Johnson, has manufactured, distributed, and sold Nectresse®, a tabletop sweetener for foods and beverages, in California and throughout the United States. (Compl. ¶¶ 2, 4, 17, 21.)

    In order to make Nectresse® more attractive to consumers, McNeil has advertised Nectresse® as both a natural sweetener and primarily made from the monk fruit plant. (*Id.* ¶ 22.) Specifically, Defendants use phrases such as "100% Natural No Calorie Sweetener," "100% Natural," "It's 100% natural with nothing artificial," and "Made From Monk Fruit," as well as images such as the leaves of the monk fruit plant and the product in a monk fruit "bowl," on Nectresse® packaging and advertising. (*Id.* ¶¶ 24, 25.)

---

[1] Defendants request judicial notice of 19 exhibits relating to the Motion to Dismiss. (Defendants' Request for Judicial Notice at 1-3 [Doc. # 24].) Viggiano also requests judicial notice of two exhibits. (Plaintiff's Request for Judicial Notice at 2 [Doc. # 26].) Because the Court need not rely on any of these documents in rendering its decision, the request for judicial notice is DENIED.

Case 2:14-cv-07250-DMG-MRW Document 35 Filed 06/12/15 Page 2 of 10 Page ID #:904

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-07250 DMG (MRWx) | Date | June 12, 2015 |
|---|---|---|---|

| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 2 of 10 |
|---|---|---|---|

In fact, Nectresse® is composed primarily of erythritol, a synthetic ingredient and, in small part, of Magou-VTM, a highly chemically processed and purified form of monk fruit extract. (*Id.* ¶ 26.) The packaging describes monk fruit in the following manner:

> Monk Fruit is a round, green melon that grows on vines on remote mountaintops in central Asia. The fruit has been cultivated for centuries. An extract from the fruit has been recently re-discovered as an ingredient ideally suited for sweetening foods and beverages. Monk Fruit Extract is about 150X sweeter than sugar and contributes zero calories per serving of Nectresse® Natural No Calorie Sweetener.

(*Id.* ¶ 24.) The packaging also states that "[e]rythritol is an all-natural, sugar alcohol that is naturally fermented from sugars and is found in many vegetables and fruits." (*Id.*)

Nectresse® is not primarily made from monk fruit since synthetic erythritol comprises approximately 83% of Nectresse®. (*Id.* ¶ 28.) Further, Nectresse® not only contains a miniscule amount of monk fruit, but the monk fruit in Nectresse® is a highly processed form of monk fruit extract called Magou-VTM. (*Id.* ¶ 30.)

At a minimum, the message that Nectresse® is a natural product is conveyed at the point of purchase on Nectresse® packaging, thus exposing all potential purchasers to the same message whether viewed in commercials or on the label. (*Id.* ¶ 22.) Viggiano was introduced to Nectresse® through both its advertising and labeling. (*Id.* ¶ 23.) Viggiano alleges that, based on the product's packaging, she and other class members reasonably understood Nectresse® to be a natural sweetener primarily made from monk fruit plant and relied on such representations in purchasing the product. (*Id.* ¶¶ 27, 53.) Viggiano also asserts that, absent those representations, she and other class members would not have purchased or paid a premium to purchase the product. (*Id.* ¶ 55.)

## II.
## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. Legal conclusions, in contrast, are not entitled to the assumption of truth. *Ashcroft v. Iqbal*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-07250 DMG (MRWx)** | Date | June 12, 2015 |
|---|---|---|---|
| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 3 of 10 |

556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)).

Viggiano's claims are grounded in fraud and subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. It is settled law that Rule 9(b)'s heightened pleading standard extends to the CLRA and the UCL when claims raised under those statutes are grounded in fraud, even when fraud itself is not raised as a cause of action. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (stating that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL where the claim "sounds in fraud") (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)). Where a plaintiff alleges a unified course of fraudulent action and relies on that conduct as the basis of a claim (including claims alleging a UCL or CLRA violation), that claim is said to "sound in fraud," even if the word "fraud" is not used. *Kearns*, 567 F.3d at 1125. In that event, the pleading of the claim *as a whole* must satisfy the particularity requirements of Rule 9(b). *Id.* at 1125, 1127. Here, Viggiano acknowledges that the actions of misrepresentation and false labeling amount to "*fraudulent* concealment and continuing misrepresentations." (Compl. ¶ 58 (emphasis added).) Indeed, Viggiano concedes these causes of action are governed by Rule 9(b), but nevertheless contends that they are properly pleaded. (Opp'n at 13.)

Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid, ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)); *Kearns*, 567 F.3d at 1125.

Should a court dismiss certain claims, it must also decide whether to grant leave to amend. "Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted) (quoting Fed. R. Civ. P. 15(a)(2)); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). "Leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).
///
///
///
///
///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-07250 DMG (MRWx) | Date | June 12, 2015 |
|---|---|---|---|
| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 4 of 10 |

## III.
## DISCUSSION

**A.  Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act Claims**

Defendants contend that Viggiano has not pleaded with particularity her UCL, FAL, and CLRA claims on the grounds that (1) the term "natural" has no objective definition, and thus it is implausible that a significant portion of the general consuming public would interpret it in the same manner; and (2) a reasonable consumer would not assume Nectresse® is made primarily from monk fruit.

False advertising claims under the UCL, CLRA, and FAL are evaluated under a "reasonable consumer" test, whereby a plaintiff must show that "members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). The California Supreme Court has recognized "that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 119 Cal. Rptr. 2d 296 (2002)) (internal quotations marks omitted). Generally, California courts have found that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938-39.

First, Defendants contend that no reasonable consumer would be misled by their labeling and marketing of Nectresse® because a reasonable consumer would know that products like a no-calorie sweetener are not literally found in nature. Viggiano is not asserting, however, that the public believes sweeteners grow on trees. Instead, Viggiano has alleged sufficient facts to show that members of the public are likely to be deceived by Defendants' use of phrases such as "100% Natural" and natural imagery into believing that Nectresse® is *derived* entirely from ingredients found in nature when, in fact, 83% of it is comprised of a synthetically created ingredient. *See, e.g.*, *Williams*, 552 F.3d at 939 ("[T]he statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."); *see also Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10–4387 PJH, 2011 WL 2111796, at *5-6 (N.D. Cal. May 26, 2011) (denying motion to dismiss where plaintiff alleged that ice cream labeled "all natural" contained synthetic ingredients); *Hitt v. Ariz. Beverage Co., LLC*, No. 08cv809 WQH (POR), 2009 WL 449190, at *7 (S.D. Cal. Feb.4, 2009) (denying motion to dismiss where the plaintiff alleged, *inter alia*, that a reasonable consumer would find the "all

Case 2:14-cv-07250-DMG-MRW Document 35 Filed 06/12/15 Page 5 of 10 Page ID #:907

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-07250 DMG (MRWx) | Date | June 12, 2015 |

| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 5 of 10 |

natural" labeling on the defendant's drink products, which contained high fructose corn syrup, to be deceptive).

Defendants next argue that, even assuming the nature of the ingredients and not the product as a whole is at issue, the term "natural" has so many colorable definitions that it is unlikely that a significant portion of the general consuming public defines it in the same manner. This same argument has been considered, and rejected, by a number of courts at the pleading stage. *See, e.g.*, *Surzyn v. Diamond Foods, Inc.*, No. 14-cv-0136-SBA, 2014 WL 2212216, at *3 (N.D. Cal. May 28, 2014) ("[T]he question of whether consumers were deceived by an 'All Natural' designation must be resolved based on consideration of evidence—and not at the pleading stage."); *Parker v. J.M. Smucker Co.*, No. C 13–690 SC, 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) (allegations that a reasonable consumer would believe that a product labeled as "all natural" contained no bioengineered or chemically altered ingredients "cannot be resolved as a matter of law").

Second, Defendants argue that Viggiano has not pleaded with sufficient particularity its claim that Defendants have misled consumers into believing that monk fruit was the primary ingredient of Nectresse®. Defendants assert that Viggiano has not pointed to any express claim that monk fruit is the primary ingredient of Nectresse®. It is well settled, however, that California's false advertising laws prohibit "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky*, 27 Cal. 4th at 951. Here, Viggiano has alleged with sufficient particularity that Defendants' use of the phrase "Made From Monk Fruit" in conjunction with the pictures of monk fruit on the packaging and in advertising misled Plaintiff and class members into purchasing a product they otherwise would not have bought but for the representation. This is so notwithstanding the fact that the ingredients of Nectresse® are fully disclosed on its label. *See Williams*, 552 F.3d at 939 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.").

Accordingly, Defendants' motion to dismiss Viggiano's UCL, CLRA, and FAL claims is **DENIED**.

B. <u>Unjust Enrichment</u>

Defendants further assert that there is no cause of action in California for unjust enrichment, and accordingly Viggiano's unjust enrichment claim should be dismissed. Further, Defendants argue that Viggiano characterizes her unjust enrichment claim as a quasi-contract claim, which is unavailable when a plaintiff also alleges an express contract claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-07250 DMG (MRWx) | Date | June 12, 2015 |
|---|---|---|---|
| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 6 of 10 |

Courts have differed over whether to classify unjust enrichment as a distinct cause of action or merely a claim for restitution. *Hydroxycut Mktg. & Sales Practices Litig. v. Iovate Health Scis. Grp., Inc.*, 801 F. Supp. 2d 993, 1010-11 (S.D. Cal. 2011) (Further, "[d]ecisions in both this federal district as well as in California state courts diverge on the proper way to conceptualize unjust enrichment." ). "In several key respects, though, the two approaches do not necessarily compete and can be harmonized. Under both views, the effect of unjust enrichment is remedied with some form of restitution." *Id.*; *see Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009).

Moreover, when accompanied with a claim of fraud, "plaintiff may . . . advance a claim [of unjust enrichment] as an alternative to breach of contract damages when the parties have a contract that was procured by fraud . . . ." *Hydroxycut Mktg.*, 801 F. Supp. 2d 1010-11 (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 388, 20 Cal. Rptr. 3d 115, 121 (2004)); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370, 108 Cal. Rptr. 3d 682, 699 (2010). The court in *Hydroxycut* held that, *inter alia*, in a false labeling claim a plaintiff may proceed on an unjust enrichment claim accompanied by warranty claims, irrespective of "whether [unjust enrichment is] viewed as a separate claim, an element of damages, or a remedy." 801 F. Supp. 2d at 1012. Here, Viggiano has properly alleged that the breach of contract is the result of fraud, and is therefore entitled to plead unjust enrichment as an alternative to breach of contract damages.

The Court therefore **DENIES** Defendants' motion to dismiss Viggiano's unjust enrichment claim.

C. **Express Warranty**

Defendants next argues that Viggiano fails to state a claim of express warranty because: (1) Viggiano does not identify a "specific and unequivocal representation of fact" that Nectresse® was processed in a particular fashion; and (2) Viggiano fails to plead that notice was given to Defendants of the alleged breach. (Mot. at 17-18.)

A plaintiff asserting a breach of express warranty claim must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *Weinstat v. Dentsply Int'l, Inc.,* 180 Cal. App. 4th 1213, 1227, 103 Cal. Rptr. 3d 614 (2010). A food label can create an express warranty. *See, e.g.*, *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-cv-05222, 2014 WL 2451290, at *6 (N.D. Cal. June 2, 2014) ("all natural" representation on packaging sufficient to state a claim for breach of express warranty); *Parker*, 2013 WL 4516156, at *6 ("all natural" is "an affirmative claim about a product's qualities");

Case 2:14-cv-07250-DMG-MRW Document 35 Filed 06/12/15 Page 7 of 10 Page ID #:909

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-07250 DMG (MRWx) | Date | June 12, 2015 |
|---|---|---|---|

| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 7 of 10 |
|---|---|---|---|

*Ham v. Hain Celestial Group, Inc.*, No. 14–cv–02044–WHO, 2014 WL 4965959, at *5-6 (N.D. Cal. Oct. 3, 2014) ("all natural" claims on waffles constituted an express warranty); *Vicuña v. Alexia Foods, Inc.*, No. C 11–6119 PJH, 2012 2012 WL 1497507, at *6 (N.D. Cal. Apr. 27, 2012) ("all natural" food label constituted an express warranty). Here, Defendants' packaging and advertising represent the product as "100% Natural" and "It's 100% natural with nothing artificial." Viggiano has thus sufficiently pleaded affirmations of fact to state a claim for breach of express warranty.

With respect to notice, in *Alvarez v. Chevron Corporation*, the Ninth Circuit held that "[t]o avoid dismissal of a breach of contract or breach of warranty claim in California, [a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." 656 F.3d 925, 932 (9th Cir. 2011) (quoting *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) (citations omitted); *see* Cal. Com. Code § 2607(3)(A). *Alvarez*, however, involved a retailer suit against a supplier, and did not address consumer goods not purchased directly from the manufacturer. 656 F.3d at 928. Cases before *Alvarez* held that a consumer need not notify a manufacturer when the product was not directly purchased from said manufacturer. *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) ("[T]imely notice of a breach of an express warranty is not required where the action is against a manufacturer and is brought 'by injured consumers against manufacturers with whom they have not dealt.'") (quoting *Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57, 61, 27 Cal. Rptr. 697 (1963)). This rule is "designed to protect a consumer who 'would not be aware of his rights against the manufacturer. . . . [A]t least until he has had legal advice it will not occur to him to give notice to one with whom he has had no dealings.'" *Sanders*, 672 F. Supp. 2d at 989 (quoting *Greenman*, 59 Cal. 2d at 61). Thus, at least one court in this District has held that *Alvarez* did not affect this consumer rule: "Consequently, the court follows *Greenman*, *Sanders*, *Toyota*, and *Aaronson* in concluding that, under California law, a consumer need not provide notice to a manufacturer before filing suit against them. *Keegan v. Am. Honda Motor Co*, 838 F. Supp. 2d 929, 950-51 (C.D. Cal. 2012). This Court finds the reasoning in *Keegan* persuasive. As a consumer who did not purchase Nectresse® directly from the Defendant manufacturer, Viggiano was not required to provide Defendants notice prior to filing suit.

Accordingly, Defendants' motion to dismiss Viggiano's express warranty claim is **DENIED**.

D.   **Implied Warranty**

Defendants argue that Viggiano fails to state a claim of breach of implied warranty as: (1) the complaint does not sufficiently allege the goods were non-merchantable; and (2) Viggiano is not in vertical privity with Defendants.

Case 2:14-cv-07250-DMG-MRW Document 35 Filed 06/12/15 Page 8 of 10 Page ID #:910

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-07250 DMG (MRWx) | Date | June 12, 2015 |
|---|---|---|---|

| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 8 of 10 |
|---|---|---|---|

Unlike an express warranty, "the implied warranty of merchantability arises by operation of law" and "provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-96, 44 Cal. Rptr. 2d 526 (1995). As defined in the Song-Beverly Consumer Warranty Act, an implied warranty of merchantability guarantees that consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.
(2) Are fit for the ordinary purposes for which such goods are used.
(3) Are adequately contained, packaged, and labeled.
(4) Conform to the promises or affirmations of fact made on the container or label.

Cal. Civ. Code § 1791.1(a); *see Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26, 65 Cal. Rptr. 3d 695 (2007); *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406, 7 Cal. Rptr. 3d 546 (2003).

First, Defendants assail Viggiano's implied warranty claim for failure to allege that Nectresse® was not fit for ordinary use. Specifically, Defendants argue, "[Viggiano] does not allege that Nectresse® lacks even the most basic degree of fitness for ordinary use . . . [nor] that Nectresse® is not suitable for use as a sweetener." (Mot. at 20.) This argument only focuses, however, on one possible breach of the implied warranty. Viggiano has sufficiently pleaded that Nectresse®'s actual ingredients do not conform to the "100% Natural" affirmation on the label. *See* Cal. Civ. Code § 1791.1(a)(4).

Second, Defendants argue that an implied warranty action requires vertical privity, and as Viggiano purchased Nectresse® from a retail store, Viggiano and Defendants are therefore not in vertical privity. A plaintiff asserting breach of implied warranty claims must stand in vertical contractual privity with the defendant. *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005). A buyer and seller stand in privity if they are in adjoining links of the distribution chain. *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6, 243 Cal. Rptr. 815 (1988). Thus, an end consumer, such as Viggiano, is not in privity with the defendant manufacturer. *Id.* Two notable exceptions exist to the general privity requirement: (1) when the plaintiff relies on written labels or advertisements of a manufacturer; or (2) special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). The first exception, upon which Viggiano relies, is only applicable to express warranties. *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696, 268 P.2d 1041, 1049 (1954) ("[T]he . . . exception, where representations are made by means of labels or advertisements, is applicable only to express warranties.") The second exception is inapplicable here because Viggiano does not allege that she is an employee of the purchaser.

Case 2:14-cv-07250-DMG-MRW Document 35 Filed 06/12/15 Page 9 of 10 Page ID #:911

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-07250 DMG (MRWx)** | Date | June 12, 2015 |
|---|---|---|---|
| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 9 of 10 |

Because Viggiano does not and cannot allege vertical contractual privity with either Defendant, Defendants' motion to dismiss Plaintiff's implied warranty claim is **GRANTED** without leave to amend as a matter of law.

### E.     Non-California State Causes of Action

Finally, Defendants contend that Viggiano lacks standing to assert claims under the laws of states other than California because she is a citizen of California and the transaction at issue occurred in California.

Viggiano argues that an exception to the standing requirement can be made at this stage in the case because it is premature.  She asserts that standing can be resolved after class certification is resolved:  class certification is "logically antecedent" to Article III standing because Defendants' standing concerns "would not exist but for the class-action certification." *Jepson v. Ticor Title Ins. Co.*, No. C06-1723-JCC, 2007 WL 2060856, at *1 (W.D. Wash. May 1, 2007).  In *Jepson*, the court found that deciding the Article III standing issue before class certification would be premature because "there is no question that the proposed class would have standing to assert non-Washington claims if it were certified."  *Id.*  Here, because Defendants' conduct was uniform and likely affected consumers in every state in a similar fashion, there is likewise little question that the proposed class of consumers of Nectresse® nationwide would have standing to assert claims under the laws of the other states if the class were certified.  *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("We agree that the class certification issues are dispositive; because their resolution here is logically antecedent to the existence of any Article III issues, it is appropriate to reach them first."); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S. Ct. 2295, 2307, 144 L. Ed. 2d 715 (1999) ("[T]he class certification issues are . . . 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing."); *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F. Supp. 2d 1256, 1264 (W.D. Wash. 2009) ("[T]he standing issue is not ripe at this time because the class certification issue is logically antecedent to the standing issue.")

As such, the Court agrees with Plaintiff that it would be premature to decide the issue of standing with respect to Viggiano's out-of-state state law claims at this juncture.  Defendants' motion to dismiss these claims for lack of standing is therefore **DENIED**.

///
///
///
///
///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 14-07250 DMG (MRWx) | Date | June 12, 2015 |
|---|---|---|---|
| Title | *Lorraine Viggiano v. Johnson & Johnson, et al.* | Page | 10 of 10 |

## IV.
## CONCLUSION

In light of the foregoing, Defendants' motion to dismiss is **GRANTED** without leave to amend as to Viggiano's breach of implied warranty claim but is otherwise **DENIED**. Defendants shall file their Answer within 21 days from the date of this Order.

**IT IS SO ORDERED.**